IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |
|---|---|
| **Randy Squires** | ) |
|     4008 21 St. N.E. | ) |
|     Washington D.C. 20018 | ) |
|  | ) |
| **Louie White** | ) |
|     6101 16th Street NW #525 | ) |
|     Washington D.C. 20011 | ) |
|  | ) |
| **Wai Tat Chung** | ) |
|     2 Blueberry Ridge Court | ) |
|     Rockville | ) |
|     Maryland 20854 | ) |
|  | ) |
| **Robert Bush** | ) |
|     12214 Quadrille Lane | ) |
|     Bowie | ) |
|     Maryland 20720 | )CA: 05 cv 01120 |
|  | ) |
|  | ) |
|  | ) |
| **Gregory Johnson** | ) |
|     16908 Gohagen Road | ) |
|     Upper Marboro | ) |
|     Maryland | ) |
|  | ) |
| **Joseph Gatling** | ) |
|     2103 Valecrest Ct. | ) |
|     Bowie | ) |
|     Maryland 20721 | ) |
|  | ) |
| **Shakir Muslim** | ) |
|     1105 Dixie Bowie Way | ) |
|     Upper Marlboro | ) |
|     Maryland 20774 | ) |
|                         **Plaintiffs** | ) |
| v. | ) |
|  | ) |
| **Robert Atcheson** | ) |
|     Metropolitan Police Department | ) |
|     6th District Headquarters | ) |
|     100 42nd Street N.E. | ) |
|     Washington D.C. 20019 | ) |
| and | ) |

1

| | |
|---|---|
| **District of Columbia, et al.** | ) |
| **Serve: Mayor Anthony Williams** | ) |
|     **Office of the Secretary** | ) |
|     **1350 Pennsylvania Ave., NW # 409** | ) |
| | ) |
|     **Office of the Attorney General** | ) |
|     **441 4th Street NW** | ) |
|     **Washington, DC 20001** | ) |
| | ) |
|     **Defendants** | ) |
| | ) |

## AMENDED COMPLAINT

COME NOW Plaintiffs Randy Squires *et al*, by and through undersigned counsel, and file this amended complaint for damages against Defendants District of Columbia and Robert Atcheson for alleged violations of Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. § 1981.

## JURISDICTION AND VENUE

1.    Jurisdiction of the Court is invoked pursuant to 42 U.S.C. § 2000(e) et seq., the Civil Rights Act of 1964, as amended and 28 U.S.C. §§ 1331, 1337, and 1343 and § 1981 et seq. Venue is proper as the employment practices at issue were committed within the jurisdiction of the District of Columbia.

## PARTIES

2.    At all relevant times, Police Officer Randy Squires ("Plaintiff Squires") an African-American, was employed by the District of Columbia Metropolitan Police Department ("DCMPD"). Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission, ("EEOC") wherein he complained on the basis of race discrimination, and harassment. The initial complaint in this case was timely filed and the EEOC issued a right to sue letter on March 8, 2005.

3.    At all relevant times, Police Officer Sergeant Louie White ("Plaintiff White") an African-American, was employed by the District of Columbia Metropolitan Police Department.

2

4. At all relevant times, Police Office Wai Tat Chung ("Plaintiff Tat Chung") an Asian-American, was employed by the DCMPD.

5. At all relevant times, Police Officer Robert Bush ("Plaintiff Bush") an African-American, was employed by the DCMPD.

6. At all relevant times, Police Officer Gregory Johnson ("Plaintiff Johnson") an African-American, was employed by the DCMPD.

7. At all relevant times, Police Officer Joseph Gatling, ("Plaintiff Gatling") an African-American, was employed by the DCMPD.

8. At all relevant times, Police Officer Shakir Muslim ("Plaintiff Muslim") an African-American, was employed by the DCMPD.

9. Defendant, District of Columbia Government ("D.C."), is a municipality that controls and operates DCMPD.

10. Defendant Robert Atcheson ("Atcheson") is a Caucasian police officer and Lieutenant in the DCMPD and is being sued in his individual and official capacities. At all times pertinent to the claims herein, Atcheson supervised the aforementioned Plaintiffs.

**FACTS COMMON TO ALL COUNTS**

11. At all relevant times, Plaintiffs were employed by the DCMPD and worked in the Environmental Crimes Unit ("ECU") and or in the Warrant Squad Unit ("WSU"). Commander Alfred Broadbent, Jr and Captain Victor Britto supervised Defendant Atcheson.

12. Throughout his supervision of Plaintiffs, Defendant Atcheson continually discriminated against Plaintiffs by taking continual actions against them that were designed to cause their removal from ECU or WSU division either voluntarily or involuntarily and to otherwise negatively affect the terms and conditions of their employment, which included lowering their

performance evaluations, impeding their promotions and treating them in harsh and unfavorable manner.

13. Defendant also subjected Plaintiffs to continuous abusive and harsh language throughout their course off employment.

### RANDY SQUIRES

14. In October 1988, Plaintiff Squires was employed by the DCMPD. He was later transferred to the ECU.

15. Albeit that Defendant Atcheson's superiors were notified about his conduct, Atcheson continued to verbally abuse Plaintiff. In one instance, Defendant Atcheson referred to Plaintiff Squires as a "mope", a racially motivated epithet for the "N" word. No disciplinary action was taken against Atcheson.

16. Defendant Atcheson also constantly denied Plaintiff's requests to attend training courses. By contrast, Atcheson allowed a similarly situated Caucasian police officer to attend training programs.

17. In November 2001, Defendant Atcheson assigned Plaintiff Squires to desk duties and seized his gun and badge without any legitimate reason. Defendant Atcheson then wrote an adverse report against Plaintiff. Defendant's conduct was designed to force the dismissal of Plaintiff.

18. In yet another instance, Defendant Atcheson ordered Plaintiff not to take a police car home while he openly permitted a Caucasian police office to take home his police car.

19. In 2002, Defendant Atcheson refused Plaintiff access to and use of certain breathing equipment designed to save life in emergency and hazardous situations, while allowing similarly situated Caucasian officers access and use of this equipment.

20. Between January 2001 and December 2003, Defendant Atcheson denied Plaintiff numerous requests for overtime while authorizing overtime for similarly situated Caucasian officers.

21. In 2003, Defendant Atcheson lowered Plaintiff Squire's performance evaluation while giving higher ratings to similarly situated Caucasian officers.

22. According to an EEOC determination, Defendant Atcheson frequently subjected Plaintiff to excessive and disproportionate discipline.

23. Defendant Atcheson also verbally harassed Plaintiff Squires repeatedly and continuously harassed Plaintiff through aggressive interrogation sessions.

24. Defendant Atcheson continuously exhibited hostile treatment towards Plaintiff and other minorities. In one instance when a North Carolina Police Officer wrongly charged Plaintiff with a criminal offence, Defendant Atcheson intentionally gave false information to North Carolina Police, knowing that it would be detrimental to Plaintiff Squires.

25. On another occasion, Defendant accused Plaintiff of unauthorized taking of a police vehicle. According to EEOC determination, "Defendant Atcheson admitted that he deliberately lied to Plaintiff [ to get] him to admit to an offense he did not commit."

26. Police managers knew that Defendant Atcheson, by way of his aggressive, racially motivated and offensive behavior, victimized and harassed Plaintiff, but failed to take any action to prevent Defendant's discriminatory conduct.

27. Atcheson conducted a racially motivated and retaliatory campaign of hatred against Plaintiff. He used profanity excessively in the workplace and verbally abused Plaintiff Squires and used derogatory terms including, but not limited to, 'mother fucker.' Atcheson further impugned Plaintiff's character by stating to other police officers that Plaintiff was a "scumbag who did not deserve to be in the police, he was going to get him fired and that he was a criminal who had been locked up in North Carolina."

5

28. Atcheson's actions toward Plaintiff Squire were mean spirited, ill willed and malicious. Further, as a direct cause of Defendant's egregious conduct and racial hostility Plaintiff Squires suffered stress, embarrassment and enormous humiliation.

## LOUIE WHITE

29. On April 30, 1984, Plaintiff White was employed by the DCMPD and was later transferred to the Environmental Crimes Unit ("ECU").

30. On October 14, 2003, Defendant Atcheson deliberately and wilfully gave Plaintiff a poor annual performance evaluation. In the previous year Plaintiff White received an overall above average performance rating.

31. Despite knowledge of Defendant Atcheson's unlawful conduct, none of his supervisors took any measure to prevent his unlawful behavior. On October 14, 2003, Defendant Atcheson ordered Plaintiff White to meet with Captain Brito to discuss Plaintiff White's alleged poor performance. That meeting was a pretext for Defendant Atcheson's racially motivated plan to force Plaintiff White out of ECU.

32. At that meeting sanctioned by his supervisors, Defendant Atcheson gave Plaintiff White two stark options: 1) to voluntarily leave the ECU or 2) participate in a Performance Rating Improvement Plan ("PRIP"). However, if Plaintiff White failed to improve under PRIP the first option would not be available to him. Defendant Atcheson's plan was racially motivated and designed to force Plaintiff White from the ECU. Similarly situated Caucasian Police Officers were not subjected to such treatment.

33. On October 20, 2003, Defendant Atcheson drafted a racially based PRIP for

Plaintiff White to allegedly "get your average members back on track." The plan was deliberately overbroad, vague and burdensome so as to ensure White's failure. Similarly situated Caucasian police officers were not subject to the same level of performance scrutiny and treatment.

34. Between October 14, 2003 and November 6, 2003, Defendant Atcheson intensified his racial animus towards and disparate treatment of Plaintiff White. Defendant Atcheson repeatedly summoned Plaintiff White to aggressive interrogation sessions, to which similarly situated Caucasian Officer were not subjected.

35. Defendant Atcheson frequently made racially discriminatory comments in Plaintiff White's presence.

## WAI TAT CHUNG

36. On February 12, 1990, Plaintiff Chung was employed by the DCMPD. In October 1996, Plaintiff Chung was transferred to the WSU.

37. In October 2000, Defendant refused to allow Chung to return to WSU after completion of a ninety (90) day assignment with the MPD's Narcotic Strike Force.

38. Plaintiff Chung returned to the WSU after he had complained to his union representative about Defendant Atcheson's actions. Defendant Atcheson retaliated by assigning Plaintiff Chung to administrative duties.

39. In April 2003, Defendant Atcheson refused to sign Plaintiff Chung's PD 1130 compensatory form until he subtracted thirty (30) minutes from the time sheet. Plaintiff Chung reported the matter to a union representative. No similarly situated Caucasian police officers has been treated in this manner.

40. Through 2003, Defendant Atcheson regularly abused Plaintiff Chung. He used profane terms which included, but were not limited to the following: "You aren't shit, you stupid fuck." "You don't know how many ways I can fuck you." Defendant Atcheson has never spoken in this manner to similarly situated Caucasian Officers.

41. Defendant Atcheson created meaningless assignments for Plaintiff Chung and repeatedly stated that he was going to get rid of him.

42. Defendant Atcheson authorized overtime for similarly situated Caucasian Officers but not for Plaintiff Chung.

43. Defendant Atcheson also gave Plaintiff Chung an unjustified low performance evaluation.

### ROBERT BUSH

44. On January 28, 1990, Plaintiff Bush was employed by the DCMPD. In April 1992 Plaintiff Bush was transferred to the WSU.

45. Between 2001 and September 28, 2003, Plaintiff Bush was subjected to Atcheson's flagrant and continuing racial discriminatory conduct. At his first meeting with Plaintiff Bush, Defendant Atcheson asserted *"I don't treat people equal because they're not. I try to treat them fairly but not as equal."* (Emphasis added)

46. Throughout Plaintiff's employment, Atcheson continuously and openly referred to minority police officers as "all pieces of shit, a bomb need to be deployed over there (the ECU)."

47. Defendant Atcheson's loathing of officers was directed continuously and exclusively to non white officers under his supervision. He openly expressed his intention "to get

8

rid of" African-American and Asian-American officers.

48. On September 28, 2003, when Plaintiff Bush was off duty but on 'limited duty' and the WSU was undermanned, Defendant Atcheson deployed him to another unit. After Plaintiff Bush's departure, Defendant Atcheson openly gloated about getting rid of him. Defendant Atcheson subsequently recruited two Caucasian officers from another unit, gave them overtime work and a departmental vehicle.

49. Defendant Atcheson also caused Plaintiff Bush's performance evaluation to be lowered while causing similarly situated Caucasian officers to receive higher ratings.

## GREGORY JOHNSON

50. On November 20, 1989, Plaintiff Johnson was employed by the DCMPD. In April 1998, he was transferred to the ECU.

51. Between August 2001 and December 2003, Plaintiff Johnson was subjected to Defendant Atcheson's continuous racial discrimination, which included *inter alia* depriving him access to and use of certain emergency breathing equipment.

52. In yet another instance, after Plaintiff requested emergency leave to attend to his ailing father, Defendant Atcheson became hostile and demanded to know the nature of Johnson's father's ailment. Similarly situated Caucasian police officers were not treated in this manner.

53. Defendant Atcheson also caused Plaintiff Johnson's performance evaluations to be lowered in 2002 and 2003, while causing similarly situated Caucasian police officers to receive above average ratings.

54. Defendant Atcheson consistently refused Plaintiff Johnson's requests for overtime; while giving Caucasian officers more favorably overtime opportunities.

9

55. Consistent with Defendant Atcheson's desire to terminate or fire African and Asian-American Officers, he conducted a number of frivolous investigations against Plaintiff Johnson which were designed to cause his termination.

### JOSEPH GATLING

56. On September 25, 1989 Plaintiff Gatling was employed by the DCMPD.

57. Defendant Atcheson flagrant discrimination caused Plaintiff to filed a complaint with an EEO Counselor within the police department.

58. Atcheson subjected Plaintiff Gatling to an hostile environment by continuously demeaning African-American and Asian-American officers his presence. This was in stark contrast to Defendant Atcheson's treatment of Caucasian police officers.

### SHAKIR MUSLIM

59. On September 20, 1992, Plaintiff Muslim was employed by the DCMPD. He was transferred to the WSU in February 1998.

60. Defendant Atcheson made every possible effort to lower his evaluation, including use of the Performance Rating Warning Notice ("PRWN") and Performance Rating Improvement Plan ("PRIP"). He also tried to remove him from the WSU by subjecting him to unjustified discipline, intimidation, threats, and negative evaluations.

61. Between September 30, 2001 and December 30, 2001 Defendant Atcheson further attempted to impede Plaintiff's promotion prospects. He rated Plaintiff 'below average' and failed to rate him as 'above average' in any category. In order to justify his adverse evaluation, Defendant Atcheson falsely asserted that "Plaintiff 'Muslim was incapable of running the unit" and that "he (Plaintiff Muslim) had admitted to not knowing what he was doing."

62. In November 2001, Defendant Atcheson told Plaintiff Muslim to leave the unit for no justifiable reason. Plaintiff Muslim refused and was subjected to a ninety (90) day PRIP, PRWN, intimidation and threats. No similarly situated Caucasian officer was treated in this manner.

## COUNT I

**RACIAL DISCRIMINATION TITLE VII**
**Plaintiff Squires**
**Defendant District of Columbia**

63   Plaintiff incorporates by reference all the allegations in paragraphs 1 through 62.

64.   Plaintiff is a member of a protected class by virtue of his race.

65.   Defendant Atcheson also treated Plaintiff Squires differently than similarly situated Caucasian police officers in several respects including, but not limited to, assignments, evaluation, overtime, disciplinary action, aggressive interrogation session, the excessive use of racially abusive language, access to and use of police cars and emergency breathing equipment.

66.   Plaintiff was subjected to this disparate treatment on the basis of his race.

67.   As a direct and proximate result of Defendant's discrimination Plaintiff suffered emotional distress and mental anguish, including but not limited to embarrassment, humiliation and loss of self esteem.

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court enters:

(a)   Judgment against Defendant for compensatory damages in an amount in excess of three hundred and fifty thousand dollars ($350,000.00);

(b)   Judgment against Defendant reasonable attorney fees and the cost of this action; and

(c )   Judgment against Defendants for such other relief the Court deems just and proper.

## COUNT II

**HOSTILE WORK PLACE DISCRIMINATION**
**TITLE VII**
**Plaintiffs Squires**
<u>**Defendant District of Columbia**</u>

68. Plaintiff incorporates by reference all the allegations in paragraphs 1 through 67

69. Defendant Atcheson deliberately and continuously intimidated, frustrated patronized and offended Plaintiff thereby creating a racially hostile environment.

70. Atchenson's use of racially abusive language, certain remarks and actions intentionally created a workplace climate of fear, intimidation and humiliation which impeded Plaintiffs ability to be productive.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court enters:

(a) Judgment against Defendant District of Columbia for compensatory damages in excess of three hundred and fifty thousand dollars ($350,000.00);

(b) Judgment against Defendant for reasonable attorney fees and costs of this action; and

(c) Judgment against Defendant for such other and further relief as this Court deems just and proper.

**COUNT III**

**RETALIATION**
**TITLE VII**
**Plaintiff Squires**
<u>**District of Columbia**</u>

71. Plaintiff incorporates by reference all the allegations in paragraphs 1 through 70.

72. In 2002 after Plaintiff complained to EEOC Defendant Atcheson retaliated, *inter alia,* by subjecting Plaintiff to excessive discipline, falsely accusing Plaintiff of taking home a police vehicle without proper authority and refusing Plaintiff Squires access to and use of certain emergency breathing equipment.

73. Defendant Atcheson's efforts constituted retaliatory conduct prohibited by Title VII.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court enters:

(a) Judgment against Defendant for compensatory damages in excess of three hundred and fifty thousand dollars ($350,000.00) for Plaintiff;

(b) Judgment against Defendant for reasonable attorneys fees, costs and such other relief the Court deems just and proper.

## COUNT IV

### RETALIATION
### Section 1981
### Plaintiff Squires
### District of Columbia and Atcheson

74. Plaintiff incorporates by reference all the allegations in paragraphs 1 through 73.

75. In 2002 after Plaintiff complained to EEOC Defendant Atcheson retaliated, *inter alia,* by subjecting Plaintiff to excessive discipline, falsely accusing Plaintiff of taking home a police vehicle without proper authority and refusing Plaintiff Squires access to and use of certain emergency breathing equipment.

76. Defendant Atcheson's efforts constituted discriminatory and retaliatory conduct prohibited by 42 USC Section 1981.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court enters:

(a) Judgment against Defendant for compensatory damages in excess of three hundred and fifty thousand dollars ($350,000.00) for Plaintiff;

(b) Judgment against Defendant Atcheson for punitive damages in an amount in excess of three hundred and fifty thousand dollars ($350,000.00) for Defendant Atcheson's actions toward Plaintiffs and to deter similar conduct in the future; and

(c)     Judgment against Defendant for reasonable attorneys fees, costs and such other relief the Court deems just and proper.

## COUNT V
## VIOLATION OF 42 U.S.C. SECTION 1981
## All Plaintiffs
## District of Columbia and Defendant Atcheson

77.     Plaintiffs incorporate by reference all the allegations in paragraphs 1 through 76.

78.     All Plaintiffs are members of a protected class by virtue of their race.

79.     Atcheson's continuous, disparate and hostile treatment of Plaintiffs intentionally and wrongly interfered with their rights to make and /or enforce their employment contracts and full and equal benefit of all laws for the security of persons of their race.

80.     Atcheson also treated Plaintiffs differently than similarly situated Caucasian police officers in assignments, evaluations, overtime, use of racially abusive language, access to and use of police cars, use of equipment and imposition of discipline as part of his calculated plan to cause either their reassignment or termination from the department.

**WHEREFORE,** Plaintiffs respectfully pray that this Honorable Court enters:

(a)     Judgment against Defendants for compensatory damages in an amount in excess of three hundred and fifty thousand dollars ($350,000.00) per Plaintiff;

(b)     Judgment against Defendant Atcheson for punitive damages in an amount in excess of three hundred and fifty thousand dollars ($350,000.00) for Defendant Atcheson's actions toward Plaintiffs and to deter similar conduct in the future; and

(c)     Judgment against Defendants for reasonable attorneys fees, costs and such other relief as this court deems just and proper.

## JURY DEMAND

Plaintiffs request a jury trial on all issues

                                              Respectfully submitted,

                                      _____/S/_____
                                      Donald M. Temple, Esq.# 408749
                                      1229 15th Street
                                      Washington, D.C. 20005
                                      (202) 628 1101
                                      (202) 628 1149 facsimile
                                      For Plaintiffs