## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Randy Squires, et al. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) Civil Action No.: 1:05-cv-01120 (JR) |
| Robert Atcheson, et al. | ) Judge James Robertson |
| | ) **ORAL ARGUMENT REQUESTED** |
| Defendants. | ) |
| | ) |
| | ) |
| _____ | ) |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT ATCHESON'S MOTION TO DISMISS

Plaintiffs, by and through undersigned counsel, hereby oppose Defendant Atcheson's Motion for Judgment on the Pleadings ("Motion"). Defendant's Motion must fail for the reasons set forth below.

## I.    INTRODUCTION

Plaintiffs Randy Squires, *et al.*, filed claims alleging racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981") against Defendants District of Columbia ("District") and Lieutenant Robert Atcheson ("Atcheson") of the Metropolitan Police Department ("MPD"). Atcheson is Plaintiffs' supervisor and a District employee. In his Motion, Defendant Atcheson argues that Plaintiffs have (1) failed to state a § 1981 claim against him, (2) failed to allege that they experienced a material adverse action, and (3) improperly sued Atcheson in his individual and official capacities. Plaintiff submits that Defendant's arguments fail to accurately capture the law, and are therefore erroneous. Thus, the Court, after a close consideration of the applicable legal authority, should deny Defendant's motion.

## II.    STATEMENT OF FACTS

At all times relevant to the matters set forth in the complaint, Plaintiffs were African-American or Asian-American employees of the District MPD.  *See* Amended Complaint ("Complaint") at ¶¶ 2-10.  Plaintiffs worked either in the Environmental Crimes Unit ("ECU") or the Warrant Squad Unit ("WSU").  *Id.* at 11.  Defendant Atcheson is a Caucasian police officer and Lieutenant employed by the District MPD. *Id.* at ¶ 10.  He supervised each Plaintiff.  *Id.*

Throughout his supervision of Plaintiffs, Defendant Atcheson continually discriminated against Plaintiffs by taking consistent, selective harsh actions against them designed to cause their removal from the ECU or WSU divisions.  *Id.* at ¶ 12.  In so doing, Atcheson negatively affected the terms and conditions of Plaintiff's employment, which included lowering their performance evaluations, impeding their promotions, and treating them in an harsh and unfavorable manner.  *Id.* at ¶ 12.  Atcheson also subjected Plaintiffs to continuous, abusive and demeaning language throughout the course of their employment.  *Id.* at ¶ 13.

More specifically, Atcheson has subjected each of the Plaintiffs to this litigation to the following illegal discrimination.  With regards to Plaintiff Squires, Atcheson: denied him training opportunities offered to similarly situated white police officers; assigned him to desk duties and seized his gun and badge without any legitimate reason; forbade him from taking his police car home while allowing a white officer to do the same; refused to grant him access to emergency breathing equipment while granting such access to white officers; denied him overtime opportunities while affording such opportunities to white officers; lowered his performance evaluation; subjected him to frequent excessive and disproportionate discipline; and gave false information to another law enforcement official as a pretext for firing him.  *See* Amended Complaint at ¶¶ 16-25.

With regards to Plaintiff White, Atcheson: deliberately and willfully gave him a poor annual performance evaluation; subjected him to a higher performance criteria than that to which white officers were subjected; and repeatedly subjected him to intense interrogation sessions, another form of treatment not visited upon white officers. *See id.* at ¶ 30.

Plaintiff Chung alleged that Atcheson: refused to allow him to return to the WSU after he completed a ninety-day assignment with the Narcotics Strike Force, and then retaliated against him upon learning that he had complained to his union representative; refused to sign Chung's compensation form unless Chung reduced his reported time, a form of treatment to which white officers were not subjected; berated him verbally through the use of profanity, without doing the same to white officers; required him to complete meaningless tasks under the constant threat of being fired; denied him overtime while not subjecting white officers to the same treatment; and gave him an unjustifiably low performance evaluation. See *id.* at ¶¶ 36-43.

Plaintiff Bush alleged that Atcheson: caused him to be removed from the unit and replaced him with white officers who were given favorable treatment; lowered his performance evaluations while not subjecting white officers to the same treatment; and routinely subjected him to verbal abuse. *See id*. at ¶¶ 44-49.

Plaintiff Johnson alleged that Atcehson: deprived him access to and use of certain emergency breathing equipment; repeatedly lowered his performance evaluations while white officers were not subjected to the same treatment;  consistently refused Johnson's request for overtime while giving white officers overtime opportunities; and subjected him to numerous frivolous investigations that were designed to cause his termination. *See id.* at ¶¶ 50-55.

Plaintiff Gatling states that Atcheson subjected him to a hostile work environment, without doing the same to white police officers. *See id.* at ¶ 58.

Finally, with regards to Plaintiff Muslim, Atcheson subjected him to unjustified discipline, intimidation, threats, and negative evaluations.  Moreover, Atcheson retaliated against Plaintiff Muslim when he refused to leave the unit by subjecting him to a more strenuous review than that to which white officers were subjected.  *See id.* at ¶¶ 59-62.

On June 6, 2005, Plaintiffs filed this civil rights litigation against the District and Atcheson, in both his individual and official capacities.  *See* Complaint at ¶¶ 9-10.  On February 27, 2006, Defendant Atcheson filed his Motion with this court, seeking judgment on the basis that Plaintiffs have (1) failed to state a § 1981 claim against him, (2) failed to allege that they experienced a material adverse action, and (3) improperly have sued Atcheson in his individual and official capacities.  *See* Motion.

As more fully set forth in the argument section below, Atcheson's Motion must fail for three reasons.  First, MPD officers are employees within contemplation of § 1981, and therefore are protected from racial discrimination under that statute.  Second, each Plaintiff has pleaded numerous facts against Atcheson from which a fact finder may find they suffered material adverse employment action.  Third,  Atcheson was actively involved in discriminating against Plaintiffs and subverting their constitutional and statutory rights against racial discrimination; therefore, he has been properly sued in both his official and, more importantly, individual capacities.

## III.    ARGUMENT

### A.    <u>Legal Standard</u>

The standard that is applied to motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as the standard that is applied to motions to dismiss under Rule 12(b)(6) for failure to state a claim.  *Kivanc v. Ramsey*, 407 F. Supp. 2d, 270, 272 (D.D.C. 2006).  A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the

claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed R. Civ. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("*Conley*"). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley,* 355 U.S. at 47-48, 78 S.Ct. 99 (internal quotation marks omitted). Thus, it is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park,* 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning,* 292 F.3d at 242.

## B.    Plaintiffs Have Stated A Claim Under 42 U.S.C. § 1981

Defendant incorrectly asserts that Plaintiffs, as MPD officers, are not employees entitled to assert rights under 42 U.S.C. § 1981. *See* Defendant Atcheson's Brief in Support of Motion ("Def. Br.") at 3. 42 U.S.C. § 1981 states, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to

make and enforce contracts . . . as is enjoyed by white citizens . . . ."  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981.  42 U.S.C. § 1981(b).[1]  Defendant erroneously cites to *Kizas v. Webster*, 707 F.2d 524, 535 (D.C. Cir. 1983) ("*Kizas*"), to support the false proposition that "[a]s a matter of law, public employees do not have a contractual relationship with their employer," and therefore cannot bring a claim under § 1981.  *See* Def. Brief at 3.  Defendant's representation of *Kizas* misstates and mischaracterizes the United States Court of Appeals for the District of Columbia Circuit's ("D.C. Circuit") opinion in that case.

In *Kizas*, the issue squarely before the court was whether clerical employees of the Federal Bureau of Investigation could bring a due process claim based on their allegations that they were deprived of certain property interests that arose from their employment contracts.  *See Kizas*, 707 F.2d at 532.  In holding that the employees' due process claims were foreclosed, the court reasoned:

> [w]e respectfully conclude that the district court's decision is irreconcilable with well-established doctrines of ***federal employment***. With limited exceptions not relevant to the instant case, ***federal workers***

---

[1]  Defendant's citation to *Domino's Pizza Inc. v. McDonald*, 126 S. Ct. 1246 (U.S. 2006) ("*McDonalds*") for the principle that "any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights" is inapposite.  In that case, the Plaintiff did not have any contractual relationship with the defendant, unlike Plaintiff here.  *See id.*  The court thus determined that the plaintiff did not have "an impaired contractual relationship and could not bring a section 1981 claim."  *See id.*  In this regard, Defendant also fails to note the implication of the 1991 Amendment to Section 1981, codified at subsection (b),  *See* 42 U.S.C. § 1981(b) (stating that the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship).

*serve by appointment*, and their rights are therefore a matter of legal
status even where compacts are made.

*Id.* at 535 (emphasis added and internal quotation marks omitted).  Clearly, a plain,
straightforward reading of *Kizas*' reasoning indicates that the decision applies only to
federal employees.  Furthermore, the cases cited in footnote 49 of that opinion further
indicate that the court's analysis was derived squarely from other cases addressing the
intersection of contract law in the context of federal employment.  *See id.*

Defendant's reliance upon *Kizas* is inapposite to District government employees
and flies in the face of the D.C. Circuit's decision in *Torre v. Barry*, 661 F.2d 1371 (D.C.
Cir. 1981).  In that case, the court equated the employment status of members of the
District of Columbia Fire Department, for purposes of bringing both a Title VII and
§ 1981 claim, to the identical status for MPD officers.  *See id.* at 1374-75.  In so doing, the
court held that individuals of both groups of District employees retain causes of action
under 42 U.S.C. § 1981.  *See id.*  Remarkably, and in stark contrast to Defendant's
argument here, the court's analysis turned on the fact that "District of Columbia
Government positions are municipal rather than Federal," and therefore municipal
employees, including MPD officers, are not constrained to Title VII's exclusive judicial
remedy for claims of racial discrimination.  *See id.*

Notwithstanding *Kizas*' reasoning, Defendant's argument is both strained and
inaccurate.  The notion that MPD officers are appointed, and therefore, cannot avail
themselves of the protection promised by § 1981 is incorrect.  For these reasons,
Defendant's argument fails, and Plaintiffs § 1981 claims should not be dismissed.

**C.    Each Plaintiff Has Properly Alleged An Adverse Action**

Defendant argues that Plaintiffs' § 1981 claims should be dismissed because the
complaint does not allege that Plaintiffs experienced material adverse action.  *See* Def.
Brief at 3.  Plaintiffs do not dispute that the substantive standards that have been
developed in Title VII cases also govern litigation under 42 U.S.C. § 1981.  *See Mungin v.*

*Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997). Thus, to state a *prima facie* case of disparate treatment discrimination under both Title VII and § 1981, a plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *See Forkkio v Powell*, 306 F.3d 1127, 1130.

In light of the foregoing criteria, however, Defendant seeks to impose upon Plaintiffs a standard of pleading more consistent with the heightened summary judgment standard rather than the less strenuous pleading requirements necessary to overcome a motion to dismiss. Simply put, the pleading requirement advanced by Defendant is wholly inconsistent with the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. As previously stated herein, it is not necessary for a plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), or to "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040.

In the present case, Defendant Atcheson has failed to "show beyond doubt" that the Plaintiffs can prove no set of facts that would entitle them to relief. In fact, each and every Plaintiff has pleaded numerous facts that not only give notice of their claims against Defendants, but also support a finding of Defendant's liability for racial discrimination, specifically as such discrimination relates to adverse employment action. All Plaintiffs have alleged, for example, that:

> Defendant Atcheson continually discriminated against Plaintiffs by taking
> continual actions against them that were designed to cause their removal

> from the ECU or WSU division either voluntarily or involuntary and to
> otherwise negatively affect the terms and conditions of their employment,
> which included lowering their performance evaluations, impeding their
> promotions and treating them in [a] harsh and unfavorable manner.

*See* Amended Complaint at ¶ 12.

Furthermore, Plaintiff Squires alleges that Defendant Atcheson: denied him training opportunities offered to similarly situated white police officers; assigned him to desk duties and seized his gun and badge without any legitimate reason; forbade him from taking his police car home while allowing a white officer to do the same; refused to grant him access to emergency breathing equipment while granting such access to white officers; denied him overtime opportunities while affording such opportunities to white officers; lowered his performance evaluation; subjected him to frequent excessive and disproportionate discipline; and gave false information to another law enforcement official as a pretext for firing.   *See* Amended Complaint at ¶¶ 16-25.

Similarly, Plaintiff White alleges that Defendant Atcheson: deliberately and willfully gave him a poor annual performance evaluation; subjected him to a higher performance criteria than that to which white officers were subjected; and repeatedly subjected him to intense interrogation sessions, another form of treatment not visited upon white officers.  *See id.* at ¶ 30.

Plaintiff Wai Tai Chung alleges that Defendant Atcheson: refused to allow him to return to the WSU after he completed a ninety-day assignment with the Narcotics Strike Force, and then retaliated against him upon learning that he had complained to his union representative; refused to sign Chung's compensation form without Chung reducing his reported time, a form of treatment to which white officers were not subjected; berated him verbally through the use of profanity, without doing the same to white officers; required him to complete meaningless tasks under the constant threat of being fired; denied him overtime while not subjecting white officers to the same

treatment; and gave him an unjustifiably low performance evaluation.  See *id.* at ¶¶ 36-43.

Plaintiff Bush alleges that Defendant Atcheson: caused him to be removed from the unit, and replaced him with white officers who were given favorable treatment; lowered his performance evaluations while not subjecting white officers to the same treatment; and routinely subjected him to verbal abuse.  *See id*. at ¶¶ 44-49.

Plaintiff Johnson alleges that Defendant Atcheson: deprived him access to and use of certain emergency breathing equipment; caused his performance evaluations to be lowered, again, while white officers were not subjected to the same treatment; refused consistently Johnson's request for overtime while giving white officers overtime opportunities; and subjected him to numerous frivolous investigations that were designed to result in his termination.  *See id.* at ¶¶ 50-55.

Plaintiff Gatling alleges that Defendant Atcheson subjected him to a hostile work environment, without doing the same to white police officers.  *See id.* at ¶ 58.

Finally, Plaintiff Muslim alleges that Defendant Atcheson subjected him to unjustified discipline, intimidation, threats, and negative evaluations.  Moreover, Atcheson retaliated against Plaintiff Muslim when he refused to leave the unit by subjecting him to a more strenuous review than that to which white officers were subjected.  *See id.* at ¶¶ 59-62.

Plaintiffs indeed have met their burden of alleging a set of facts that meet Rule 8's notice pleading requirement.  For these reasons, this Court should deny Defendant's motion to dismiss.

### D.    Defendant Atcheson Can Be Sued In His Individual Capacity

Defendant argues that Plaintiffs' § 1981 claims against him in his individual capacity should be dismissed because he acted in his official capacity.  *See* Def. Brief at 5.  In so doing, Defendant concedes with compelling authority that the District is vicariously liable for the acts of the officer performed within the scope of his

employment.  *See id*.  Defendant further argues that because the District is a party-defendant in this case, the claims against Atcheson in his official capacity are "entirely redundant" and should be dismissed.  *Id.*  (citing *Barnes v. District of Columbia* 2005 Dist. LEXIS 10435 (D.D.C. 2005) ("*Barnes*")).

Regarding the individual capacity suit, Defendant's argument, which is based exclusively upon basic agency principles, is brutally inaccurate and confuses the issue. *See* Def. Brief at 5 (stating "[w]hen an agent, acting within the scope of employment, acts wrongfully, the principal is liable").  While basic agency principles, as set forth in the *Restatement of Agency 2d* § 219 ("[a] master is subject to liability for the torts of his servants while acting in the scope of employment"), are useful in determining whether an employer may be held liable for an employee's conduct, this court's jurisprudence has not wholly shielded employees and supervisors from liability as Defendant suggests.  For example, in *Barnes*, cited by Defendant in support of its assertion of Defendant's own immunity from suit because of redundancy, the court held that an employee/supervisor could be sued in his individual capacity.  *Barnes* at *6.

In that case, the Plaintiff sued the District, the Mayor, and others for violating 42 U.S.C. § 1983.  *See Barnes* at 2.  The Mayor moved to dismiss the § 1983 claim against him in his individual and official capacities.  *See id.* at 5-8.  The Mayor argued that the individual capacity suit should be dismissed because the plaintiff had not pleaded facts showing that the Mayor had direct involvement with or personal knowledge of the facts of the case.  *Id.* at *5.  Regarding the official capacity suit, the Mayor argued that it was duplicative of the claims that were brought against the District.  *Id.* at *7-8.

Ruling on the motion to dismiss, Judge Roberts dismissed the claims that had been brought against the Mayor in his official capacity, but did not dismiss the claims asserted against him in his individual capacity.  *Id.*  In so doing, and with respect to the Mayor's individual susceptibility to suit, the court reasoned that a supervisor may be

held liable where the supervisor knows about conduct and facilitates it or knowingly ignores it. *See id.* at 6. Specifically, the court reasoned:

> In *International Action Center v. United States, 361 U.S. App. D.C. 108, 365 F.3d 20 (D.C. Cir. 2004)*, the District of Columbia Circuit identified the requirements for individual supervisory liability under § 1983. *International Action Center* "draws a sharp distinction between supervisorial liability for direct action and liability for inaction," and "makes clear that supervisorial liability cannot be grounded on a theory of general inaction." *Barham v. Ramsey, 338 F. Supp. 2d 48, 62 (D.D.C. 2004)*. Rather, "[a] supervisor who merely fails to detect and prevent a subordinate's misconduct . . . cannot be liable for that misconduct. The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Int'l Action Ctr., 365 F.3d at 28* (internal citation and quotations omitted).

*Id.*

Granted, *Barnes* deals squarely with 42 U.S.C. § 1983, but for purposes of the analysis before this court, the same analysis is applicable to claims asserted under § 1981 because courts in this jurisdiction have held that an individual employee and supervisor may be sued in his individual capacity under that statute as well. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F Supp. 2d 27, 33 (D.D.C. 1999) ("*Sheppard*"). In *Sheppard* the court held that "individual supervisors ban be sued under 42 U.S.C. § 1981." *Id.* at 33. The court's analysis in that case, wherein it called into serious doubt the reasoning set forth in *Hunter v. Ark Restaurants Corp.*, 3 F.Supp. 2d 9 (D.D.C. 1998), cited by Defendant in his brief, is particularly instructive:

> First, the *Hunter* court did rely solely on the Title VII holdings in holding that individual supervisors were not liable under § 1981. That seems problematic, considering the differences between the two statutes. Specifically, section 1981 has been recognized to prohibit racial discrimination in the making and enforcement of purely private contracts as a valid exercise of Congress' power under the Thirteenth Amendment to eradicate the badges and incidents of slavery. In contrast, Title VII was created to address discriminatory conduct in the workplace only. Further, the statutory language of Title VII makes it clear that only "employers"

> are liable for discriminatory acts. *See* 42 U.S.C. § 2000e(b). In contrast, 42 U.S.C. § 1981 makes no such distinction.

*See Sheppard* at 33 (citations and internal quotation marks omitted).

It is noteworthy that the court in *Barnes* did not challenge the above-stated principles set forth in *Sheppard*. Indeed, the court, in maintaining employees' and supervisors' susceptibility to suit for unconstitutional intentional acts, was very clear to draw a distinction between supervisorial action versus in-action.[2]

In the case at bar, Plaintiffs' allegations in no way suggest that Defendant Atcheson was an innocent supervisor who merely failed to detect prohibited conduct. Rather, Plaintiffs assert that he was relentlessly aggressive in his violation of their civil rights. Indeed, he is the subject of much of the complaint. For these reasons, he has been properly sued in his *individual* capacity.

## IV.    CONCLUSION

Defendant Atcheson's Motion should be denied. Despite his arguments, which are contradicted by the law of this jurisdiction and the facts as set forth in the complaint, Plaintiffs have, in fact, (1) stated a valid claim under 42 U.S.C § 1981 (2) set forth a set of facts from which a fact finder could find that each Plaintiff experienced a material adverse action, and (3) alleged facts which would provide a basis for personal liability against Defendant Atcheson under § 1981.

---

[2] Plaintiffs further argue that to the extent § 1981 permits an award of punitive damages, here, by foreclosing the possibility of suit against Defendant in his individual capacity, Defendant seek to deny Plaintiffs the full protection of that statute.

For these reasons, Defendant's motion to dismiss should be denied.

Respectfully submitted,
this 17th day of March, 2006,


/s/
_____

Donald M. Temple [408749]
Dhamian A. Blue [488664]
TEMPLE LAW OFFICES
1229 15th Street, N.W.
Washington, D.C. 20005
(202) 628-1101
**COUNSEL FOR PLAINTIFFS**