UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RANDY SQUIRES, *et al*. | : | |
| Plaintiff, | : | |
| v. | : | Case No.: 1:05-cv-01120 (JR) |
| DISTRICT OF COLUMBIA, *et al.,* | : | |
| Defendants | : | |

**DEFENDANT DISTRICT OF COLUMBIA'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant District of Columbia (the "District"), by and through counsel, respectfully moves this Court, pursuant to Fed. R. Civ. Pro. 56 (c), to enter judgment in its favor and, against Plaintiffs Wai Tat Chung, Robert Bush, Gregory Johnson, Joseph Gatling, Shakir Muslim and Louie White.  Additionally, the District is entitled to a judgment as a matter of law as to Plaintiff Randy Squires' 42 U.S.C. §1981 claim against the District. In support of this motion the District states as follows:

1. Plaintiffs Randy Squires, Wai Tat Chung, Robert Bush, Gregory Johnson, Joseph Gatling, Shakir Muslim and Louie White cannot show that a District custom or policy violated their rights under 42 U.S.C. §§ 1981 and 1983 and, therefore, Counts IV-VII should be dismissed.

    A Memorandum of Points and Authorizes in Support of this motion is attached.

                                          Respectfully submitted,

                                          LINDA SINGER
                                          Attorney General for the
                                          District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division


/s/Nicole L. Lynch/s/_____
NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II


/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RANDY SQUIRES, *et al.*

      Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.,*

      Defendants

Case No.: 1:05-cv-01120 (JR)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

This case arises out of the alleged discriminatory and retaliatory actions of Defendant Lieutenant Robert Atcheson (hereinafter "Lieutenant Atcheson") of Metropolitan Police Department (MPD). Plaintiffs are suing the District of Columbia (hereinafter "the District") and Lieutenant Atcheson, individually, because they claim that Lieutenant Atcheson's actions violated their rights under Title VII of the Civil Rights Act of 1964 (Counts I, II and III), 42 U.S.C. § 1981 (Counts IV, V and VII) and 42 U.S.C § 1983 (Count VI). Second Amended Complaint.[1] Plaintiff Squires is the only plaintiff that has asserted claims under Title VII. All Plaintiffs, including Plaintiff Squires, have asserted claims under §§ 1981 and 1983. This memorandum of points and authorities only concerns claims brought under §§1981 and 1983. Defendant District of Columbia is not moving for judgment on Plaintiff Randy Squires remaining claim under Title VII.

---

[1] Paragraphs 1 through 80 of the Amended Complaint are incorporated by reference into the Second Amended Complaint.

**STATEMENT OF FACTS**

All Plaintiffs are police officers or officials with the MPD, who worked in the Environmental Crimes Unit (ECU) or in the Warrant Squad Unit (WSU) and were under the supervision of Lieutenant Atcheson. Second Amended Complaint at ¶ 11. Plaintiffs allege that Lieutenant Atcheson discriminated against them because of their race, created a hostile work environment and engaged in acts of retaliation. Second Amended Complaint.

Plaintiff Squires, an African-American, alleges that Lieutenant Atcheson used racially motivated language towards him by referring to Plaintiff Squires as a "mope." *Id.* at ¶ 15. Plaintiff Squires claims that Lieutenant Atcheson treated him different to similarly situated white police officers by denying him training, denying the use of a take home vehicle, denying him the use of a self contained breathing apparatus, denying him overtime, lowered his performance evaluation, subjected him to "aggressive interrogation session" and provided false information about him to a North Carolina law enforcement agency, called him a "scumbag" and referred to him as a "motherfucker." *Id.* at ¶¶ 14-27. According to Plaintiff Squires, Lieutenant Atcheson's conduct was reported to Lieutenant Atcheson's superior officials and they failed to any action to stop Lieutenant Atcheson conduct. *Id.* at 26.

Plaintiffs Wai Tat Chung, Robert Bush, Gregory Johnson, Joseph Gatling, Shakir Muslim and Louie White also make similar allegations against Lieutenant Atcheson. Plaintiff White claims that Lieutenant Atcheson gave him a poor performance evaluation and subjected him to aggressive interrogation sessions. *Id.* at ¶¶ 30-34. According to Plaintiff White similarly situated white police officers were treated more favorably by Lieutenant Atcheson. *Id.* at ¶ 34. Plaintiff White also acclaims that Lieutenant Atcheson made racially discriminatory comments. *Id.* at ¶ 35.

Plaintiff Wai Tat Chung, an Asian-American, alleges that Lieutenant Atcheson treated him differently from white officers by assigning him to administrative duties, refusing to approve overtime and gave him low performance rating. *Id.* at ¶¶ 36-43. Plaintiff Bush, African-American, also alleges that Lieutenant Atcheson lowered his performance rating and expressed an intent to get rid of all the black officers. Id. at ¶¶ 44-49. Plaintiff Johnson, an African-American, also alleges that Lieutenant Atcheson denied him the use of emergency breathing equipment, became hostile when Plaintiff Johnson requested leave to attend to his ailing father, lower his performance rating, and denied him overtime. *Id*. at ¶¶ 50-55. According to Plaintiff Johnson, similarly situated white officers were not treated in the same manner. *Id*. Plaintiff Gatling, an African-American, alleges that Lieutenant Atcheson created a hostile work environment by "demeaning African-American and Asian-American officers in his presence." *Id*. at ¶¶ 56-58. Plaintiff Muslim, an African-American, alleges that Lieutenant Atcheson subjected him to "unjustified discipline, intimidation, threats, and negative evaluations." *Id*. at ¶ 60. Plaintiff Muslim further alleges that Lieutenant Atcheson "attempted to impede [his] promotion prospects. *Id*. at ¶ 61. According to Plaintiff Muslim similarly situated white officers were not treated more favorably. *Id*. at ¶ 62.

As previously stated, Counts IV-VII are brought against the District pursuant to 42 U.S.C. §§ 1981 and 1983. However, Plaintiffs do not allege have not proven that a District policy or custom was the moving force that caused them injury. Second Amended Complaint, generally.

**STANDARD OF REVIEW**

Under Fed. R.Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue of trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor. *Laningham v. United States Navy*, 259 U.S. 317, 324 (1987). If the evidenced is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.

**ARGUMENT**

**I.  Counts IV-VII should be dismissed because the Plaintiffs have not alleged and cannot show that a custom or policy of the District violated their rights under 42 U.S.C. §§ 1981 and 1983.**

In order to maintain a claim against the District under 42 U.S.C. §§ 1981 and 1983 Plaintiff must allege and establish that a custom or policy of the District was the moving force that caused him harm. *Jett v. Dallas Independent School District,* 491 U.S. 701, 710-737 (1989). Since Plaintiff has failed to make such allegations and indeed cannot prove that a District custom

6

or policy approved by a District policymakers was the cause of his alleged injuries, Counts IV-VII should be dismissed and judgment entered for the District.

In 1987, when *Jett* was decided, 42 U. S. C. § 1981 provided that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other."

The statute did not provide for liability against the government. *Jett, supra*.

In *Jett*, however, the Supreme Court addressed two critical issues relating to municipal liability under §1981. In *Jett*, an employment discrimination case, a white teacher sued the principal and school district claiming that his termination from his coaching job was because of his race. Plaintiff brought suit under §§1981 and 1983. First, the Supreme Court held that § 1983 was plaintiff's exclusive remedy for any alleged violations of his rights and under §1983 the school district could not be held liable under a theory of *respondeat superior*. *Jett*, 491 U.S. at 731. Second, and on point with the issues in the instant case, the Supreme Court held that the "custom and policy" analysis announced in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), applies to municipal liability under §1981. *Jett*, 491 U.S. at 731.

Tthe Civil Rights Act of 1991, §101 amended §1981 by adding two subsections, one of which was § 1981(c). This new subsection provides that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Thus, the 1991 amendment to §1981 provided for direct liability against government entitles and reversed the Supreme Courts' holding in *Jett* as to this question only.

The amendment did not, however, effect the Supreme Court's holding as to the custom and policy required. *Powell v. City of Pittsfield,* 143 F. Supp. 2d 94, 110-114 (D.Mass. 2001). Since the 1991 amendment to §1981, courts have consistently applied the custom and policy analysis to §1981 claims against municipalities. *Medina v. District of Columbia* 2007 U.S. Dist. (Decided June 6, 2007) (Sullivan, J.) (custom and policy analysis applied to a violation of rights under §1981); *Taylor, et al. v. District of Columbia Water & Sewer Authority*, 241 F.R.D. 33, n5 (Decided March 13, 2007)(Kennedy, J) (The requirement of a common policy applies to intentional discrimination under Section 1981); *Federation of African Am. Contractors, et al. v. City of Oakland, et al.,* 96 F.3d 1204, 1215 (Ninth Cir. 1996); *Johnakin v. City of Philadelphia*, 1996 U.S. Dist. LEXIS 445, No. Civ. A. 95-1588, 1996 WL 18821, at *4 (E.D. Pa. Jan. 18, 1996); *Gallardo v. Bd. Of County Comm'rs*, 857 F. Supp. 783, 786-87 (D. Kan. 1994); *see also Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 654-56 (S.D.N.Y. 1994) (not resolving whether section 1981(c) overturns *Jett*'s first principal, but holding that "policy or custom" must yet be established). Thus, in order to maintain a claim against the District under §1981, Plaintiff must still allege and prove that his injuries were caused by a custom or policy approved by a District policymaker in accordance with *Monell, supra.*

As explained in *Monell v. Dep't of Social Servs. of the City of New York*, the District can be held liable for Plaintiff's constitutional claims under 42 U.S.C. § 1983 only if the Plaintiffs allege facts that indicate their injury was caused by a policy or custom of the District. 436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). To show that a municipal custom or policy caused a constitutional violation, Plaintiff must do more than identify conduct attributable to the municipality. *Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404*. Plaintiff must "show fault on the part of the city based on a

course of action its policy-makers consciously chose to pursue." *Carter v. Dist. of Columbia*, 254 U.S. App. D.C. 71, 795 F.2d 116, 122 (D.C. Cir. 1986). That conduct must be "the moving force of the constitutional violation." *Monell, 436 U.S. at 694*.

In *Baker v. District of Columbia,* the DC Circuit court stated that Plaintiff can establish a municipal custom or policy by:

> the explicit setting of a policy by the government that violates the Constitution, the action of a policy maker within the government, the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,' or the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations.

*326 F.3d 1302, 1306-07 (D.C. Cir. 2003).* A policy maker, for the purposes of municipal liability is an official who has discretion to exercise particular functions assigned and to establish final government policy respecting activity. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83; see also *Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy . . . . The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").

In the District, the Mayor and the Chief of Police are the MPD's policymakers. The Mayor's authority over the MPD is established by DC Code § 5-101.03 (2001 edition), which provides:

> It shall be the duty of the Mayor of the District of Columbia at all times of the day and night within the boundaries of Police District:
>
> (3) To protect the rights of persons and property . . . .

9

The Chief of Police's policymaking authority is found in District of Columbia Municipal Regulations. Title 6A, § 800.3 provides:

> The Chief of Police shall promulgate all orders, rules and regulations of the Mayor or Council which pertain to the work of the Metropolitan Police Department, and shall issue those instructions, and promulgate those orders, rules, and regulations, not inconsistent with the law or with the overall D.C. Government policy, as he or she may deem proper in the exercise of his or her functions as chief executive of the department.

In this case, Plaintiffs do not allege nor haev they proved that a policy or custom of the District caused their alleged injury under Sections 42 U.S.C. § 1981 and § 1983. *See* Complaint at ¶ 13-14; Second Amend. Complaint at ¶ 3-4. There is no evidence to establish that the Mayor or the DCMPD Chief of Police set a policy that violated any of the Plaintiffs' constitutional rights. The Plaintiffs also cannot establish that the Mayor or the MPD Chief of Police was deliberately indifferent which caused the alleged violation of their constitutional rights. Thus, the District was not the "moving force" behind the alleged violation of the Plaintiffs' constitutional rights. Counts IV-VII of the Plaintiffs' complaint should, therefore, be dismissed because the District cannot be held liable under a theory of respondeat superior for alleged unconstitutional acts of its employees. *Jett*, 491 U.S. at 731.

WHEREFORE, the District respectfully requests that the Court grant its motion to dismiss.

Respectfully submitted,

LINDA SINGER
Attorney General for the
District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/NICOLE L. LYNCH/S/_____
NICOLE L. LYNCH [471953]
Chief Civil Litigation Division Section II


/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C. 20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail: davida.jackson@dc.gov

11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDY SQUIRES, *et al*.<br><br>Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.,*<br><br>Defendants | Case No.: 1:05-cv-01120 (JR) |

**DEFENDANT'S DISTRICT OF COLUMBIA'S STAEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendant District of Columbia, by and through the Office of the Attorney General, hereby, submit the following statement of material facts as to which there is no genuine issue.

1. This case arises out of the alleged discriminatory and retaliatory actions of Defendant Lieutenant Robert Atcheson (hereinafter "Lieutenant Atcheson") of Metropolitan Police Department (MPD).   Second Amended Complaint.

2. Plaintiff Squires is the only plaintiff that has asserted claims under Title VII.

3. All Plaintiffs, including Plaintiff Squires, have asserted claims under §§ 1981 and 1983.

4. All Plaintiffs are police officers or officials with the MPD, who worked in the Environmental Crimes Unit (ECU) or in the Warrant Squad Unit (WSU) and were under the supervision of Lieutenant Atcheson.  Second Amended Complaint at ¶ 11.

5. Plaintiffs do not allege and have not proven that a District policy or custom was the moving force that caused them injury.   Second Amended Complaint, generally.

Respectfully submitted,

LINDA SINGER
Attorney General for the
District of Columbia

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division
/s/NICOLE L. LYNCH/S/_____
NICOLE L. LYNCH [471953]
Chief Civil Litigation Division Section II


/s/David A. Jackson/s/_____
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C. 20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail: davida.jackson@dc.gov