DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

194

1    more questions.  You just reminded me of the

2    questions that I have.

3            So let me ask you, you had said that

4    Investigator Dance from DPW said that Lieutenant

5    Atcheson had referred to the group of black

6    officers or investigators at the ECU as mopes,

7    and that Investigator Dance indicated to you

8    that he looked up the word in a dictionary and

9    it referred to the N word.

10           Was that your testimony?

11       A.   I don't think he looked it up in the

12   dictionary.  He said he looked it up.  Where he

13   looked it up at I don't know.

14       Q.   Have you ever looked it up, looked up

15   the word?

16       A.   You asked me that before and my answer

17   was no.  And I felt that when Dance told me that

18   because he would call us lazy, and he would call

19   us dumb, that when he said mope and Dance said

20   that it was -- that it was derogatory, I felt

21   that even though he didn't, even though it

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

195

1  wasn't, I still felt that he was so close to

2  saying that word, he had to say something that

3  -- that would relate to that.

4         Because he would always call us -- it

5  was so humiliating to hear that he would call us

6  dumb or lazy.  And as far as mope goes, you

7  know, I mean he used to say that all the time.

8  And he would call you dumb, call you lazy, call

9  you these things.  You know, he would call me

10  these things and I --

11         Q.   Who would call you these things?

12         A.   Lieutenant Muslim -- I mean Lieutenant

13  Atcheson would call me that.  And Lieutenant

14  Muslim would call and say that he said this

15  about me; and how people would come to me and

16  say that he wants to get you fired.

17         Are you still in the environmental

18  crime?

19         Q.   In addition to claims that you

20  suffered stress and embarrassment, and enormous

21  humiliation, were there any ways other than what

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

196

1   you have already told me about that you have

2   been humiliated?

3       A.   Yeah.   I guess with my mom and my

4   godmother.   My family, friends, yes.

5       Q.   How have you been humiliated with

6   your them?

7       A.   I think that they know that I'm in

8   trouble.   At least they used to call me being

9   the galley man, me being in trouble at work, and

10  how my life -- how I come home and they see how

11  sad I am.

12       They're not used to me being sad and

13  unhappy.   It's like they always see me as a

14  jolly person so -- and especially my godmother.

15  She couldn't believe that I would get into any

16  trouble so --

17      Q.   I'm not clear, maybe you can explain

18  it to me, why you feel that you're in trouble.

19      A.   Excuse me?

20      Q.   Why do you feel that you're in trouble

21  with the MPD?

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

197

1      A.    Why?

2      Q.    Yes.

3      A.    That's an easy question because you

4  have a label as a -- as a problem child, because

5  you look and see what a person has been through.

6  People talk and people say, you know, he got

7  adverse action for this.  He has adverse action

8  for that.

9           Do you know I can't go anywhere now?

10  I won't be able to transfer over to anywhere.

11  The only place I have to go now is to retire.

12  And I pray to god that I'm able to get there

13  without getting fired because of Lieutenant

14  Atcheson.

15          Now you're saying Lieutenant Atcheson

16  is no longer you're supervisor.  What you have

17  to keep in mind is, I can use words to say bad

18  things about you that people will believe them

19  if I say them good enough.

20          And that's how Lieutenant Atcheson is.

21  He uses other people to get to you.

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

198

1      Q.    Have you ever requested or have you

2  ever been interested in taking a sergeant's

3  exam?

4      A.    I used to.   I used to.

5      Q.    Have you been prevented from taking

6  the sergeant's exam?

7      A.    No, I have not.

8      Q.    What positions within the MPD that you

9  are eligible for as in the record of officer or

10  investigator that you have applied for and been

11  rejected?

12      A.    I no longer want to apply for any job

13  because I just want to leave because of the way

14  that MPD has treated me.  I just don't have a

15  desire to go anywhere else.

16      Q.    When you say MPD, are you referring to

17  people other than Lieutenant Atcheson?

18      A.    No.   I'm saying people -- MPD and

19  Lieutenant Atcheson are all in the same because

20  the people who he knows work for MPD.  He knows

21  a lot of people in MPD.  As a matter of fact he

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

199

1    knows the chief of police.  I mean they were

2    lieutenants together.

3        Q.    Which chief of police?

4        A.    The new chief of police.  I believe

5    that if I can convince you enough to say that a

6    person is bad, even if that person is not, when

7    that person messes up you'll say, that's right.

8    That person is bad.

9            If I could leave today and they would

10   give me a retirement, I would leave today.  I

11   would give up my badge and gun because I don't

12   feel like I would get a fair shake from anybody

13   now.

14           So if they told me I could pay a

15   hundred thousand dollars right not, I would go

16   to bank and get a hundred thousand dollars to

17   leave today, because I -- it's so hard.  I don't

18   think I'm going to make it for the rest of the

19   time.

20           Because he still gets -- he's eligible

21   to be promoted.  I don't care how much trouble

200

1    he was in.  He's still eligible for promotion.

2    He's on the captain's list.  He has not been

3    penalized.  He got 30 days but he was --

4              He's supposed to be terminated for

5    this.  The day before he was getting ready to

6    get terminated the chief of police said, no,

7    he's not a racist.  He's just a bad supervisor.

8              And he's still receiving complaints

9    right as we speak.  He still has complaints, and

10   they're from people of minority.  They have

11   problems with him.  So I'm not just the only

12   one.

13             So I'm telling you that he has people

14   and he keeps conversating with people.  And I'm

15   telling you I will be -- it would take god to

16   actually to get me to the end of my retirement.

17        Q.   But you don't know of any specific

18   incident in which Lieutenant Atcheson has said

19   something about you to some other official --

20        A.   Yeah, but -- sorry.

21        Q.   -- that interfered with your ability

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

201

1    to either get promoted or appointed to a

2    position that you had qualified for in the MPD?

3         A.    Not only -- I know a person where he

4    has denied --

5         Q.    I'm talking about you, not somebody

6    else.

7         A.    I'm saying he has stopped me from

8    being -- getting an allotment for investigator.

9    We're supposed to get money for our dress attire

10   and he has stopped that.  Lieutenant Atcheson

11   stopped that.

12        Q.    Did Investigator Ruleman or Kurgan get

13   money for their dress attire?

14        A.    You've got to ask them that.  I don't

15   know.

16        Q.    But I have to ask you because you're

17   bringing the complaint.

18        A.    I can only talk for myself.  You asked

19   me to speak for them and they're not here.  I

20   have never asked them that question so how can I

21   speak for them?  I don't know because I don't

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

202

1    see their paycheck so I don't know what they're

2    getting.

3             MR. JACKSON:  If you give me

4    one minute I think I might be done.

5             I have no further questions.

6             MR. TEMPLE:  Just a few.

7         EXAMINATION BY COUNSEL FOR PLAINTIFF

8    BY MR. TEMPLE:

9        Q.   Are you aware at any point as to

10   whether any of the officers worked for Home

11   Depot in the security assignment?

12       A.   Yes.

13       Q.   Was that during the same time that

14   Lieutenant Atcheson was supervising you?

15       A.   Yes.

16       Q.   Was he supervising the officer?

17       A.   Yes.

18       Q.   Who was the officer?

19       A.   Paul Kurgan.

20       Q.   Can you state for the record what you

21   know about that?

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

203

1        A.    Paul Kurgan was -- I found working for

2   Home Depot out in Maryland.   And Captain Gordon

3   who was commander at the time -- Captain Gordon

4   now -- saw Paul Kurgan out there and confronted

5   him about working out there.

6            And he said he had permission to work

7   out there.

8            And he said, what, you have

9   permission.   And he asked him who he gave -- you

10  know, submitted the paperwork for a part-time.

11           And he said he got it from Lieutenant

12  Atcheson.

13           And Captain Gordon called Lieutenant

14  Atcheson and asked him about it.   He said, yeah

15  I got it somewhere.   And he never did produce

16  his paperwork.

17           And Paul Kurgan was never disciplined

18  for working part-time out in PG County at the

19  Home Depot.

20       Q.    Do you know if any of the officers

21  were allowed to take their cars home working on

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

204

1    the WSU detail?

2        A.    Yes.   Paul Kurgan was allowed to take

3    his car home.

4        Q.    How do you know that?

5        A.    Because I seen Paul Kurgan take the

6    car.   I knew Paul Kurgan had the car.   I knew

7    that Paul Kurgan worked overtime at the warrant

8    squad.   And we were not allowed.   We were not

9    asked.

10            And Paul Kurgan was asked.   And they

11   had an all white detail.

12       Q.    You no longer work in ECU; is that

13   correct?

14       A.    No, I do not.

15       Q.    Has ECU, is it still in place?

16       A.    No.   The ECU was disbanded and

17   notified.   I was notified on a Friday that I was

18   changed to a District.   I was now assigned to a

19   District.   I was assigned to the Fourth

20   District.

21            Greg was assigned to the Fifth

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

205

1    District, and Paul Kurgan was assigned to the

2    Sixth District.  And Carl Ruleman was assigned

3    to the Seventh District.

4         The white officers went back to their

5    districts.  The black officers were not allowed

6    to go back to their original district.  Me and

7    Greg Johnson never came from 4-D.  I never came

8    from 4-D.  Greg Johnson never came from 5-D.

9         Carl Ruleman came from 7, and Paul

10   came from 6.  And they are now doing

11   environmental crime -- well, Carl is not.  Carl

12   is out on POD.  But Paul Kurgan, he's doing

13   environmental crime.  He has never stopped doing

14   environmental crime.

15        We are no longer doing environmental

16   crime.

17        Q.   Do you know if he's an investigator or

18   an officer?

19        A.   He's an officer.  Paul Kurgan's an

20   officer and he is doing environmental crime.

21        Q.   You said that you cry a lot.  Do you

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

206

1    cry a lot?

2        A.    Yes.

3        Q.    Why?

4        A.    The humiliation, the -- being

5    embarrassed, just a lot of things, being upset

6    about the way the job treated me because I was

7    right and Lieutenant Atcheson did everything to

8    discredit me.  And he made it well known that he

9    was going to get me fired.  And he did

10   everything.

11           I didn't feel I could do my job

12   anymore because he would follow me home.  He was

13   just -- you know, I felt like he was just

14   everywhere looking for me to make a mistake.

15   And I feel like now the police has now labeled

16   me, so now they're looking for me to make

17   mistakes.

18       Q.    Do you think that the pager incident

19   was harassment?

20       A.    Yes I do.

21       Q.    Do you think the North Carolina

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

207

1    incident was harassment?

2        A.   Yes, I do.

3        Q.   Have you ever heard Lieutenant

4    Atcheson call any other white police officers

5    lazy?

6        A.   No, I have not.

7        Q.   Have you ever heard him call them

8    stupid?

9        A.   No, I have not.

10       Q.   Have you ever heard him yell and

11   scream at them?

12       A.   No, I have not.

13       Q.   Have you ever heard him refer to them

14   as mother fuckers?

15       A.   No.

16       Q.   Have you ever heard them refer to them

17   as mopes?

18       A.   No, I have not.

19            MR. TEMPLE:   I have no other

20   questions.

21            MR. JACKSON:   I just have a couple

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

208

1    followups.

2      FURTHER EXAMINATION BY COUNSEL FOR DEFENDANTS

3    BY MR. JACKSON:

4        Q.    Have you ever applied to work outside

5    employment?

6        A.    Yes.

7        Q.    And was your request approved or

8    denied?

9        A.    It was approved, but it was before

10   Lieutenant Atcheson.

11       Q.    During the time that Lieutenant

12   Atcheson was your lieutenant, did you ever apply

13   for outside employment?

14       A.    No.

15       Q.    Now you said that the ECU was

16   disbanded.  And who issued that order?

17       A.    Came from the chief of police.

18       Q.    Which chief was that?

19       A.    The now chief, Chief -- I forget her

20   name.

21       Q.    Talking about the current chief?

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

209

1     A.    Yes.

2     Q.    Earlier you said that Kurgan and

3   Ruleman were detailed from their districts to

4   the ECU?

5     A.    No.   They detailed from the ECU back

6   to their district.

7     Q.    I thought you testified earlier that

8   you and the other officers, the regular

9   officers, are investigators and that Kurgan and

10  Ruleman were detailed to the ECU?

11    A.    They were.

12    Q.    Okay.  So that's what I asked.  They

13  were detailed to the ECU.

14    A.    They were, but they became permanent.

15  After awhile they became permanent.

16    Q.    So their detail ended?

17    A.    Right.

18          MR. JACKSON:  No further questions.

19          (Discussion off the record.)

20          (Whereupon, the deposition was

21  concluded at 3:41 p.m., and signature was

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

210

1    reserved.)

2             *      *      *      *      *      *

DEPOSITION OF RANDY SQUIRES
Conducted on July 10, 2007

211

1          (I have read the foregoing pages, 1

2      through 210, inclusive, which contain

3      a correct transcription of the answers

4      given to me to the questions therein

5      recorded, except as noted on the

6      attached errata sheet.)

7

8      _____

9        RANDY SQUIRES

10

11

12

13

14

15

16

17

18

19

20

21

212

1          CERTIFICATE OF NOTARY PUBLIC

2          I, Bonnie Marcus Olachea, the officer

3    before whom the foregoing deposition was taken,

4    do hereby certify that the witness whose

5    testimony appears in the foregoing deposition

6    was duly sworn by me; that the testimony of said

7    witness was taken by me in stenotype and

8    thereafter reduced to typewriting under my

9    direction; that said deposition is a true record

10   of the testimony given by said witness; that I

11   am neither counsel for, related to, nor employed

12   by any of the parties to the action in which

13   this deposition was taken; and, further, that I

14   am not a relative or employee of any attorney or

15   counsel employed by the parties hereto, nor

16   financially or otherwise interested in the

17   outcome of the action.

18          *Bonnie Marcus Olachea*

19          Notary Public in and for

20          The District of Columbia

21   My Commission Expires:  July 31, 2007

Exhibits

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RANDY SQUIRES, et al.,                    :

      Plaintiffs,                         :

             v.                           :    C. A. No.1:05cv1120 (JR)

ROBERT ATCHESON, *et al.*,                :

      Defendants.                         :

<u>SECOND NOTICE OF DEPOSITION</u>

TO:    Randy Squires
       c/o Donald Temple, Esquire
       1229 15th Street, N.W.
       Washington, DC 20005

       Comes now the Defendant District of Columbia, pursuant to Rule 30 of the Federal Rules

of Civil Procedure and gives notice that it will take the deposition of the Plaintiff Randy Squires,

before a person authorized to take oaths in the District of Columbia. The deposition will be held

on Tuesday July 10, 2007 at 9:30 AM at the Office of the Attorney General for the District of

Columbia, 441 4th Street, NW, 6th Floor South, Washington, DC 20001, and will continue

thereafter until completed. **THE DISTRICT DEMANDS THAT PLAINTIFF PRODUCE**

**BEFORE OR ON THE DAY OF THE DEPOSITION EACH AND EVERY DOCUMENT**

**SET FORTH IN ATTACHMENT "A" TO THIS NOTICE OF DEPOSITION.**

       This notice, served upon Plaintiff's counsel Donald Temple, Esquire, 1229 15th Street,

N.W., Washington, DC 20005, this 13th day of June, 2007, requires Plaintiff's appearance.

       Failure to appear for this deposition will result in a request for sanctions pursuant to Rule

37 of the Federal Rules of Civil Procedure.

                       Respectfully submitted,

                       LINDA SINGER
                       Attorney General for the
                       District of Columbia



Squires

Deposition Exhibit No.
1

7/10/07    B40

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

NICOLE L. LYNCH [471953]
Chief Civil Litigation Division Section II

*David A. Jackson*

DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C. 20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail: davida.jackson@dc.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of June 2007, a copy of the foregoing second Notice of Deposition was sent by first class mail, postage prepaid to:

Donald Temple, Esquire
1229 15th Street, N.W.
Washington, DC 20005

*David A. Jackson*

DAVID A. JACKSON

### ATTACHMENT "A"

**THE DISTRICT DEMANDS THAT PLAINTIFF PRODUCE BEFORE OR ON THE DAY OF THE DEPOSITION EACH AND EVERY DOCUMENT SET FORTH BELOW.**

1.      Copies of all "Charges of Discrimination" and/or "Complaints of Discrimination" concerning any allegations as alleged in the Second Amended Complaint filed with the Metropolitan Police Department concerning any and all claims of discrimination as set forth in the second amended complaint.

2.      Copies of all "Charges of Discrimination" and/or "Complaints of Discrimination" concerning any allegations as alleged in the Second Amended Complaint filed with the District of Columbia Office of Human Rights concerning any and all claims of discrimination as set forth in the second amended complaint..

3.      Copies of all "Charges of Discrimination" and/or "Complaints of Discrimination" concerning any allegations as alleged in the Second Amended Complaint filed with the Equal Employment Opportunity Commission (EEOC) concerning any and all claims of discrimination as set forth in the second amended complaint.

4.      Copies of all "Right to Sue" letters received from Equal Employment Opportunity Commission (EEOC) and/or the District of Columbia Office of Human Rights concerning any and all claims of discrimination as set forth in the second amended complaint.

5.      Copies of all performance evaluations from 2000 to the present.

6.      Copies of all applications for a promotion submitted from 2000 to the present.

7.      Copies of all reprimands, notices of adverse action, letter of counseling, or any other notice of discipline, including proposed notices of discipline, concerning Plaintiff from 2000 to the present.

8.      Copies of any letters, notes, emails, memorandum, or any other written document, generated by Plaintiff and sent to Commander Broadbent and/or Commander John and/or Captain Brito, regarding any and all allegations as set forth in the second amended complaint.

**METROPOLITAN POLICE DEPARTMENT**
Special Services Command
Office of the Superintendent of Detectives

February 17, 2005

<u>MEMORANDUM</u>

TO          Assistant Chief Police
            Special Services Command

THRU:       Commander ~~[illegible handwriting]~~  3/24/05
            Office of Superintendent of Detectives

THRU:       Captain
            Special Services Command    } *see approval 23 Mar 05*
                                          *McReese*

THRU:       Lieutenant
            Environmental Crimes Unit

SUBJECT     Request for forty hours Administrative Leave for Sgt. Louie White; Inv
            Randy Squires; Inv. Greg Johnson and Inv. Carl Ruleman to attend the
            Surveillance Operations Training by the Multi-jurisdictional Task Force at
            St. Petersburg College, St. Petersburg, FL, May 16-20, 2005

I request forty hours of Administrative Leave for the above Investigators and myself to
attend the Surveillance Operations Training at St. Petersburg College in St. Petersburg,
FL May 16-20, 2005. All members will be rescheduled for redeployment.

All tuition fees will be paid in full by the Multijurisdictional Task Force    I am
requesting from MPD only the expenses for travel, lodging and Per-diem.

Lodging @ $86.00 per night x 5 nights x 4 people =  $1720.00
Air-Fare @ $ 183.00 per person x 4 =                $ 732.00
Per diem @ 38.00 a day x5 days x 4 people =         $ 760.00
                                    Total           $3,347 00

Attached for your review is a copy of the course outline.

                                    Louie White
                                    Sergeant
                                    Environmental

*Squires*
Deposition Exhibit No. 2
7/10/07    BMV

**METROPOLITIAN POLICE DEPARTMENT**
Special Services Command
Office of the Superintendent of Detectives

February 17, 2005

<u>MEMORANDUM</u>

TO:        Assistant Chief of Police
           Special Services Command

THRU:      Commander
           Office of Superintendent of Detectives

THRU:      Captain   *Rec approval of will . . . ox*
           Special Services Command

THRU:      Lieutenant
           Environmental Crimes Unit

SUBJECT:   Request for forty hours Administrative Leave for Sgt. Louie White; Inv.
           Randy Squires; Inv. Greg Johnson and Inv. Carl Ruleman to attend the
           Surveillance Operations Training by the Multi-juridictional Task Force at
           St. Petersburg College, St. Petersburg, FL, May 16-20, 2005

I request forty hours of Administrative Leave for the above Investigators and myself to
attend the Surveillance Operations Training at St. Petersburg College in St. Petersburg,
FL May 16-20, 2005.  All members will be rescheduled for redeployment.

All tuition fees will be paid in full by the Multi-jurisdictional Task Force.  Also, I am
requesting from MPD only the expenses for travel, lodging and Per-diem in the amount
of $3,347.

Attached for your review is a copy of the course outline.

Louie White
Sergeant
Environmental Crimes Unit

**Government of the District of Columbia**
**Metropolitan Police Department**

**Obligated Service Agreement**

1. I agree that upon completion of the training described on the attached UN Form 38, that I will remain with the District of Columbia Government for a period equal to three times the length of the training (or for any lesser period that may be determined according to current regulations). I agree that the term, *"length of training,"* as used above shall be as defined by the applicable laws and regulations in effect at the time and that the period of service shall be as computed by the appropriate authority from official records, and that it shall commence on the first work day following the completion of training.

2. I agree to participate in, and complete the training course to the best of my ability, unless my withdrawal is required by, or acceptable to, the District of Columbia Government. I agree to obtain approval from my supervisor and/or agency training officer, in advance, of any change in my approved training program involving course and schedule changes, withdrawals or in completions, and increased costs.

3. I agree that if I voluntarily leave the District of Columbia Government before completing this period of service, I will reimburse the District of Columbia Government for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or in my behalf, in connection with this training. I also agree that, if I voluntarily leave the District of Columbia Government to enter the service of another agency covered by the same provisions of law (Title V, Chapter 41, U.S. Code), before completing the period of service, that I will give my organization written notice of at least ten work days during which time a determination concerning reimbursement will be made. If I fail to give this advance notice, or do not receive written notice of waiver of payment or transfer of my obligation to the gaining agency, I agree to repay the amount of additional expenses incurred by the District of Columbia in this training.

4. I agree that if I fail to complete this training in a manner acceptable to the District of Columbia Government, that I will reimburse the District of Columbia for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or on my behalf.

5. I understand that any amounts which may be due the agency, as a result of any failure on my part to meet the terms of this agreement, may be withheld from any monies owed to me by the District of Columbia government or the Federal government or may be recovered by such other methods as are approved by law.

6. I understand that this agreement does not commit the District of Columbia Government to continue my employment.

---

**Student's Name (Print):** Randy Squires    **Signature:** _Randy Squires_

**Student's Mailing Address:** 3220 Pennsylvania Ave., SE., WDC  20020

**Course Title/Number:** Surveillance Operations Training _____/_____

_____/_____

**Semester/Session:** May 16-20    **Year:** 2005

**University/College or Training Provider:** St. Petersburg College, St. Petersburg, Florida

**Address:** P.O. Box 13489

St. Petersburg, FL  33733

**Date:** _____

UN-38-A 12/80

**Government of the District of Columbia**
**Metropolitan Police Department**

**Obligated Service Agreement**

1.  I agree that upon completion of the training described on the attached UN Form 38, that I will remain with the District of Columbia Government for a period equal to three times the length of the training (or for any lesser period that may be determined according to current regulations). I agree that the term, *"length of training,"* as used above shall be as defined by the applicable laws and regulations in effect at the time and that the period of service shall be as computed by the appropriate authority from official records, and that it shall commence on the first work day following the completion of training.

2.  I agree to participate in, and complete the training course to the best of my ability, unless my withdrawal is required by, or acceptable to, the District of Columbia Government. I agree to obtain approval from my supervisor and/or agency training officer, in advance, of any change in my approved training program involving course and schedule changes, withdrawals or in completions, and increased costs.

3.  I agree that if I voluntarily leave the District of Columbia Government before completing this period of service, I will reimburse the District of Columbia Government for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or in my behalf, in connection with this training. I also agree that, if I voluntarily leave the District of Columbia Government to enter the service of another agency covered by the same provisions of law (Title V, Chapter 41, U.S. Code), before completing the period of service, that I will give my organization written notice of at least ten work days during which time a determination concerning reimbursement will be made. If I fail to give this advance notice, or do not receive written notice of waiver of payment or transfer of my obligation to the gaining agency, I agree to repay the amount of additional expenses incurred by the District of Columbia in this training.

4.  I agree that if I fail to complete this training in a manner acceptable to the District of Columbia Government, that I will reimburse the District of Columbia for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or on my behalf.

5.  I understand that any amounts which may be due the agency, as a result of any failure on my part to meet the terms of this agreement, may be withheld from any monies owed to me by the District of Columbia government or the Federal government or may be recovered by such other methods as are approved by law.

6.  I understand that this agreement does not commit the District of Columbia Government to continue my employment.

---

Student's Name (Print): Louie White    Signature: _____

Student's Mailing Address: 3220 Pennsylvania Ave., SE WDC 20020

Course Title/Number: Surveillance Operations    / _____

_____ / _____

Semester/Session: May 16-20    Year: 05

University/College or Training Provider: St. Petersburg College, St. Petersburg, FL.

Address: P.O. Box 13489

St. Petersburg, FL 33733

Date: _____

UN-38-A 12/80

**Government of the District of Columbia**
**Metropolitan Police Department**

**Obligated Service Agreement**

1.     I agree that upon completion of the training described on the attached UN Form 38, that I will remain with the District of Columbia Government for a period equal to three times the length of the training (or for any lesser period that may be determined according to current regulations). I agree that the term, *"length of training,"* as used above shall be as defined by the applicable laws and regulations in effect at the time and that the period of service shall be as computed by the appropriate authority from official records, and that it shall commence on the first work day following the completion of training.

2.     I agree to participate in, and complete the training course to the best of my ability, unless my withdrawal is required by, or acceptable to, the District of Columbia Government. I agree to obtain approval from my supervisor and/or agency training officer, in advance, of any change in my approved training program involving course and schedule changes, withdrawals or in completions, and increased costs.

3.     I agree that if I voluntarily leave the District of Columbia Government before completing this period of service, I will reimburse the District of Columbia Government for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or in my behalf, in connection with this training. I also agree that, if I voluntarily leave the District of Columbia Government to enter the service of another agency covered by the same provisions of law (Title V, Chapter 41, U.S. Code), before completing the period of service, that I will give my organization written notice of at least ten work days during which time a determination concerning reimbursement will be made. If I fail to give this advance notice, or do not receive written notice of waiver of payment or transfer of my obligation to the gaining agency, I agree to repay the amount of additional expenses incurred by the District of Columbia in this training.

4.     I agree that if I fail to complete this training in a manner acceptable to the District of Columbia Government, that I will reimburse the District of Columbia for the tuition and related fees, travel, per diem, and other special expenses (excluding salary) paid to me, or on my behalf.

5.     I understand that any amounts which may be due the agency, as a result of any failure on my part to meet the terms of this agreement, may be withheld from any monies owed to me by the District of Columbia government or the Federal government or may be recovered by such other methods as are approved by law.

6.     I understand that this agreement does not commit the District of Columbia Government to continue my employment.

**Student's Name (Print):** Gregory Johnson     **Signature:**

**Student's Mailing Address:** 3220 Pennsylvania Ave., SE  WDC  20020

**Course Title/Number:** Surveillance Operatins     /

    /

**Semester/Session:** May 16-20     **Year:** 2005

**University/College or Training Provider:** St. Petersburg College, St. Petersburg, FL

    **Address:** P.O. Box 13489

    St. Petersburg, FL  33733

**Date:** 3 16 05

UN-38-A 12/80

## SETTLEMENT AGREEMENT
### ENVIRONMENTAL CRIMES UNIT/ACTING PAY
#### (Johnson, Kurgan, Ruleman, Squires)
#### FOP 01-23

In the above group grievance, members are challenging the Department's failure to pay them acting pay for investigative work performed with the Environmental Crimes Unit and promote them to Detective/Investigator status. The Union has notified the Department of its intention to pursue arbitration in this matter. The Metropolitan Police Department and the Fraternal Order of Police and the affected members hereby agree to the following terms to settle this matter:

1. The Department will compensate the members at the investigator level for all time spent in investigative work beginning the first full pay period after the filing of the grievance - June 11, 2001.
2. The parties understand that the positions currently occupied by these grievants will be permanently filled through the established process for filling investigator positions.
3. The demand for promotions is hereby withdrawn.
4. This Agreement is deemed confidential, non-discoverable, will not be disclosed to any one without a need to know, and will not be used as evidence or precedent in any future matters.
5. This Agreement ends all future claims, appeals or grievances relating to this matter.

For the Department:

_Michael Fitzgerald_
Michael Fitzgerald
Executive Assistant Chief
Date: 6/18/02

For the Union:

_William Sarvis_
William Sarvis
FOP Labor Consultant
Date: 6/18/02

Randy Squires _Randy Sq_____   6-19-02

Carl E. Ruleman _Carl E Ruleman_   5/15/02

Gregory J. Johnson _____   6-19-02

Paul M. Kurgan _Paul M. Kurgan_   6/14/02

---

Squires

Deposition Exhibit No. 3

6/10/07          BMC



# METROPOLITAN POLICE DEPARTMENT
Washington, D.C.

## OFFICER PERFORMANCE RATING FORM

*The mission of the Metropolitan Police Department is to eliminate crime, fear of crime, and general disorder, while establishing respect and trust within the community.*

**1. RATEE'S NAME (Last, First, MI)**

SQUIRES RANDY

**2. SOCIAL SECURITY #**

5 7 7 8 4 0 4 1 3

**5. RATING PERIOD**

| FROM: | TO: |
|---|---|
| 9/03 | 10/04 |

**6. PURPOSE OF RATING**
*(Fill in the type of rating)*

- ● Annual
- ○ Transfer
- ○ Detail
- ○ Warning
- ○ Supervisor's Departure

**3. ELEMENT** 9 0 8

**4. ASSIGNMENT** 2 0 1

*(See Manual for code)*

Darken the oval completely.

Use a No. 2 pencil.

Correct Mark ●

**7. RATER'S NAME (Last, First, MI)**

White Louie

Mark Reflex® by NCS EM-222647-2:654321    HR06    Printed in U.S.A.

## 8. PERFORMANCE RATING SUMMARY

**RATING CONVERSION TABLE**

| | | |
|---|---|---|
| 4.5 – 5.0 = | 5 | = Outstanding |
| 3.5 – 4.4 = | 4 | = Above Average |
| 2.5 – 3.4 = | 3 | = Average |
| 1.5 – 2.4 = | 2 | = Below Average |
| 0.4 – 1.4 = | 1 | = Unsatisfactory |

| PERFORMANCE DIMENSIONS | Out-standing | Above Average | Average | Below Average | Unsatis-factory | Converted Rating |
|---|---|---|---|---|---|---|
| A. Job Knowledge | ⑤ | ④ | ③ | ② | ① | |
| B. Problem Solving | ⑤ | ④ | ③ | ② | ① | |
| C. Professionalism | ⑤ | ④ | ④ | ② | ① | |
| D. Interpersonal Relations | ⑤ | ④ | ③ | ② | ① | |
| E. Communication | ⑤ | ④ | ③ | ② | ① | |
| F. Work Habits | ⑤ | ④ | ③ | ② | ① | |
| G. General Policing | ⑤ | ④ | ③ | ② | ① | |

**Rating Total**

**SOCIAL SECURITY #**

5 7 7 8 8 4 0 4 3

**RANK**

- ● Sergeant
- ○ Lieutenant
- ○ Captain
- ○ Inspector
- ○ Commander
- ○ Assistant Chief
- ○ Chief of Police

**NOTE:**
In order to receive an **OVERALL RATING** of *Outstanding*, a ratee must have obtained a **Converted Rating** of *Above Average* or *Outstanding* in all dimensions.

**OVERALL RATING**

- ○ Outstanding (32–35)
- ○ Above Average (28–31)
- ○ Average (21–27)
- ○ Below Average (14–20)
- ○ Unsatisfactory (7–13)

Signature

Date

Squires

Deposition Exhibit No. 4

7/10/07    BiMc

Original – Personnel    Copy 1 – Element    Copy 2 – Ratee

# OFFICER PERFORMANCE STANDARDS WORK SHEET

**INSTRUCTIONS:** Use the Rating Conversion Table to determine the converted rating and record on the far right by darkening the matching oval. See Supervisory Manual for additional information.

| RATING CONVERSION TABLE | RATING SCALE |
|---|---|
| 4.5 – 5.0 = 5 | 5 = Outstanding |
| 3.5 – 4.4 = 4 | 4 = Above Average |
| 2.5 – 3.4 = 3 | 3 = Average |
| 1.5 – 2.4 = 2 | 2 = Below Average |
| 0.4 – 1.4 = 1 | 1 = Unsatisfactory |

## A. JOB KNOWLEDGE

1. Knows related General Orders, Special Orders, unit policies and procedures, and violations of the D.C. Code and D.C. Municipal Regulations.  ⑤ ④ ③ ② ①

2. Keeps informed of assignment-related information and intelligence.  ⑤ ④ ③ ② ①

Total Rating = ___ /2 = ___  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## B. PROBLEM SOLVING

3. Evaluates routine and emergency situations, investigations and staff assignments.  ⑤ ④ ③ ② ①

4. Handles routine and emergency situations, investigations and staff assignments.  ⑤ ④ ③ ② ①

Total Rating = ___ /2 = 3  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## C. PROFESSIONALISM

5. Demonstrates integrity.  ⑤ ④ ③ ② ①

6. Dedicates self to duty.  ⑤ ④ ③ ② ①

7. Maintains bearing and appearance.  ⑤ ④ ③ ② ①

8. Is self-starting and resourceful.  ⑤ ④ ③ ② ①

Total Rating = ___ /4 = 3.2  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## D. INTERPERSONAL RELATIONS

9. Relates to citizens, and members of outside agencies.  ⑤ ④ ③ ② ①

10. Relates to co-workers.  ⑤ ④ ③ ② ①

11. Relates to superiors.  ⑤ ④ ③ ② ①

Total Rating = ___ /3 = ___  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## E. COMMUNICATION

12. Prepares written material.  ⑤ ④ ③ ② ①

13. Transmits and receives oral information.  ⑤ ④ ③ ② ①

Total Rating = ___ /2 = 3  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## F. WORK HABITS

14. Complies with departmental policies, procedures, and safety practices.  ⑤ ④ ③ ② ①

15. Uses and maintains department equipment properly.  ⑤ ④ ③ ② ①

16. Is dependable in work attendance, punctuality, and use of sick leave.  ⑤ ④ ③ ② ①

17. Accepts assigned tasks.  ⑤ ④ ③ ② ①

Total Rating = ___ /4 = ___  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

## G. GENERAL POLICING

18. Demonstrates general skills.  ⑤ ④ ③ ② ①

19. Practices community policing. *(OPTIONAL)*  ⑤ ④ ③ ② ①

20. Patrols. *(OPTIONAL)*  ⑤ ④ ③ ② ①

21. Organizes investigations. *(OPTIONAL)*  ⑤ ④ ③ ② ①

22. Develops investigations. *(OPTIONAL)*  ⑤ ④ ③ ② ①

Total Rating = ___ /1, 2, 3, 4, or 5 = ___  ➡ Converted Rating = ➡ ⑤ ④ ③ ② ①

# METROPOLITAN POLICE DEPARTMENT
Operational Support Command
Superintendent of Detectives Division

December 5, 2005

<u>MEMORANDUM</u>

TO:        Assistant Chief of Police
           Office of Professional Responsibility

THRU:      Assistant Chief of Police
           Operational Support Command

SUBJECT:   Final Investigative Report and Recommendation Involving
           A Medical No-Show by Detective Randy Squires, CS#05-2040

Your attention is invited to the attached investigative report prepared by Sergeant Louie White of this command. He recommends that Detective Randy Squires receive a PD 750 for failing to appear for his scheduled appointment on October 28, 2005.

After reviewing the facts of this case, I concur with this finding. A complete copy of the investigation is being submitted for your review and recommendation.

Michael L. Anzallo
Commander



METROPOLITAN POLICE DEPARTMENT
Operational Command Services
Superintendent of Detectives Division
Special Services Branch

November 8. 2005

MEMORANDUM:

TO:            Assistant Chief of Police
               Office of Professional Responsibility

THRU:          Assistant Chief of Police
               Operational Command Services

THRU:          Commander
               Superintendent of Detectives Division

THRU:          Captain                *M Reese cm 28 Nov05*
               Special Investigations Branch

THRU:          Lieutenant
               Environmental Crimes Unit

SUBJECT:       Final Investigative Report with Recommendations concerning Investigator
               Randy Squires of the Environmental Crimes Unit Failure to Appear for
               scheduled Clinic appointment.  (CS#05-2040)

## CRONOLOGICAL NARRATIVE SECTION

On Friday, October 28, 2005 a PD 141 was received stating that Investigator Randy
Squires failed to appear for a scheduled 1430 Hrs. clinic appointment reference to
a follow up physical exam.    (Attachment #1)

In a written statement submitted by Investigator Squires he stated that he did not respond
To the clinic due to he had been working surveillance and it was simply a oversight on
his behalf.

The undersigned is conducting Investigator Squires investigation into this matter.

## MEMBER INVOLVED

| | | |
|---|---|---|
| Investigator Randy Squires | Badge IV52 | (provided a written statement) |
| Duty & Uniform Status | On-duty and in uniform | |
| Personal: | African American Male    7/18/59    46 years old | |
| Assignment: | OSD Environmental Crimes Unit | |
| Appointment Date: | 10/24/88    17 year member | |
| Current Duty Status: | Full Duty | |

## INVOLVED INVESTIGATOR STATEMENT

### Investigator Squires

Investigator Squires prepared a written statement in regards to this incident.

In a written statement submitted by Investigator Squires he states he did not respond to the clinic due to the fact he had been working surveillance and it was simply a oversight on his behalf.   (Attachment #2)

## COMPLAINANT STATEMENT

N/A

## POLICE WITNESS STATEMENT

N/A

## CIVILIAN WITNESS STATEMENT

N/A

## ADDITIONAL INFORMATION

Investigator Squires was in a full duty status and worked the 2300 tour of duty on the 28th

## SUMMARY AND CONCLUSION

In the written statement provided by Investigator Squires on November 7, 2005 he admits that he did not respond to the Medical Services Division at the scheduled time designated.  Investigator Squires had a reporting time of 1430 hours on October 28, 2005

Investigator Squires did report to the Medical Services Division on October 28, 2005 however he did not report until 1630 hours

## RECOMMENDATIONS

Based on the facts of this investigation, the undersigned finds the allegation that Investigator Randy Squires did miss his scheduled reporting time at the Medical Services Division on October 28, 2005 be classified as SUSTAINED

Furthermore, it is my recommendation that Investigator Randy Squires receive a PD 750 for this incident for Late/No-Show for a Clinic appointment as required by General Order 1001.1 Part HC.        (Attachment #3)

Louie White
Sergeant
ECU


**ATTACHMENTS**

Attachment #1        PD 141
Attachment #2        Investigator Squires PD 119 Statement
Attachment #3        PD 750



METROPOLITAN POLICE DEPARTMENT
Special Services Command
Office of the Superintendent of Detectives
Warrant Investigations Section

December 11, 2003

## MEMORANDUM

TO:        Sergeant Louie White
           Environmental Crimes Unit

FROM:      Lieutenant Robert Atcheson
           Warrant Investigations Section

SUBJECT:   PD 62-E (Documentation Form)

On November 6, 2003, I prepared a memorandum (Attachment) directing you to prepare a Final Investigative Report on alleged misconduct by Investigator Kurgan no later than December 3, 2003. As of this writing, December 11, 2003, I have not received that investigative report or a request for an extension.

After speaking with you about this issue and the fact that you were late with the investigative report, you mentioned that the administrative office had given you a due date of January 7, 2004.

You are again reminded of the importance of preparing all correspondence in a timely fashion. I would also like to remind you that as a sergeant under my command, you are responsible for due dates that I set in place for your correspondence. The administrative office does not override my authority or directive as it relates to the due dates that I set for you or your correspondence. I would further like to remind you that you have been issued two (2) other P.D 62-Es and a Letter of Prejudice for the same dereliction of being late with your correspondence that you are responsible for preparing.

Again, I strongly encourage you to take the necessary steps to ensure that you are not late with turning in any correspondence in the future.

This documented counseling is designed to address your lack of responsibility, professionalism and commitment to the members of your unit and the Metropolitan Police Department in the following performance dimensions and standards of which you are rated:

   A.  Job Knowledge (2)
   C.  Professionalism (5,6 and 8)
   E.  Communications (13)

Squires

Deposition Exhibit No. 6

7 - 10 - 07

You are hereby reminded of the importance of returning correspondence by the due date or requesting an extension in a timely fashion.  Further actions of this sort will result in disciplinary action.


_Lt. Robert Atcheson_____  12/11/03
Lt. Robert Atcheson            Date


_____  12/11/03
Sgt. Louie White            Date