IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANDY SQUIRES, et al.           )<br> )<br>        Plaintiffs,           )<br> )<br>    v.                          )        CASE NO. 1:05-cv-01120 (JR)<br> )<br>DISTRICT OF COLUMBIA, et al.    )<br> )<br>        Defendants.             )<br> )<br>_____)| |

**PLAINTIFFS' OPPOSITION TO DEFENDANT ROBERT ATCHESON'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs, by and through the undersigned counsel, respectfully move this Court, pursuant to Federal Rule Civil Procedure 12(b)(6) and 56 and LCvR 7, to deny the Motion for Partial Summary Judgment by Defendant Robert Atcheson. In an effort to reduce duplication, Plaintiffs refer to and incorporate herein the Statement of Material Facts in Dispute and Exhibits, which accompanied Plaintiffs' Opposition to Defendant District of Columbia's Motion for Partial Summary Judgment, as filed by Plaintiffs on or about November 13, 2007.

As stated more fully in the accompanying Memorandum:

A. Considering That Plaintiff Sufficiently Stated a Claim Against Defendant Atcheson Pursuant to U.S.C. §1983, Dismissal Under Fed. R. Civ. P. 12(b)(6) is Improper.

B. Plaintiffs' Section 1983 Claims Satisfy the McDonnell Douglass Analysis And Are Therefore Sufficient to Survive Summary Judgment.

C. Defendant Atcheson is Not Entitled to Qualified Immunity Warranting Summary Judgment.

D.  Genuine Issues of Material Fact as to Whether Defendant Atcheson is Entitled to Qualified Immunity Preclude Summary Judgment.

Respectfully submitted,

/s/ Donald M. Temple /s/
Donald M. Temple #408749
1229 15th Street, NW
Washington, DC 20005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RANDY SQUIRES, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  CASE NO. 1:05-cv-01120 (JR) |
| | ) |
| DISTRICT OF COLUMBIA, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT ROBERT ATCHESON'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   PRELIMINARY STATEMENT**

This matter is before this court on the mixed motion of Defendant Robert Atcheson ("Atcheson"), whereby Atcheson seeks dismissal of the instant action pursuant to Fed. R. Civ. P. 12(b)(6) and summary judgment pursuant to Fed. R. Civ. P. 56(c). As this court is aware, Atcheson's instant Motion follows the partial motion for summary judgment by Defendant District of Columbia (the "District") and Plaintiffs' opposition thereto. Notably, Plaintiffs' Opposition to the District's Motion sets forth the relevant factual background in this matter and other substantive and procedural arguments precluding dismissal in this case. Accordingly, Plaintiffs hereby incorporate by reference Plaintiffs' Memorandum of Points and Authorities in Support of their Opposition to Defendant District of Columbia's Motion for Partial Summary Judgment. Plaintiffs otherwise set forth the following in opposition to Defendant Atcheson's instant dismissal motion.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6)

In determining a Rule 12(b)(6) motion to dismiss, "the material allegations of the complaint are taken as admitted," and the court must liberally construe the complaint in the plaintiffs' favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court must also assume that the plaintiffs can prove all that they aver. *Ray v. Proxmire*, 581 F.2d 998, 1003 (U.S. App. D.C. 1978), *cert. denied*, 439 U.S. 933 (1978). In the face of the plaintiffs' favorable stance under Rule 12(b)(6), the movant has the burden of demonstrating that no claim has been stated and that plaintiffs can prove none of the complaint's allegations. *Johnsrud v. Carter*, 620 F.2d 29 (1980).

Notwithstanding the movant's proof, the court must follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46. The Rule 12(b)(6) motion is viewed with disfavor and rarely granted. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Civil 2d §1357 at 321 (West 1990). Indeed, motions to dismiss for failure to state a claim are "granted sparingly and with caution in order to make certain that plaintiff is not improperly denied a right to have his claim adjudicated on the merits." *Id*. at Civil 2d §1349 at 192-93.

### B. Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (c)

Similar to the standard for a Rule 12(b)(6) motion, the standard for granting summary judgment under Fed. R. Civ. P. 56 is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (U.S. 1986), *citing*, 6 Moore para. 56.153, p. 56-466; 10A Wright §

2727, p. 124. The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, *citing*, Fed. R. Civ. P. 56(c). Whether a fact is "material" is determined by the applicable substantive law, and for a dispute to be "genuine," a reasonable jury must be able to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Only after the moving party adequately demonstrates that no genuine issue of material fact exists does the burden then shift to the nonmoving party to present sufficient evidence to reasonably support a jury verdict in its favor. *Celotex Corp. v. Catrett*, *supra*, at 324. In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Indeed, the court must always consider the evidence, and the inferences from it, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Significantly, the Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, *supra,* at 248. In sum, "[if] . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment . . . ." *Id.* at 331, *citing, In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 258 (3rd

Cir. 1983), *rev'd on other grounds* by *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

### III.   FACTUAL BACKGROUND

See Part III of Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion to Dismiss, filed on or about November 13, 2007.

### IV.   ARGUMENT

Defendant Atcheson seeks dismissal as to Count VI of Plaintiffs' Second Amended Complaint on the grounds that Plaintiffs "failed to state a claim against Defendant Atcheson pursuant to 41 U.S.C. § 1983" and summary judgment on the grounds that "Atcheson is entitled to qualified immunity." Atcheson's Motion at p. 1. Notwithstanding Atcheson's contentions, for the reasons to follow dismissal and summary judgment are improper.

**A.   Considering That Plaintiff Sufficiently Stated a Claim Against Defendant Atcheson Pursuant to U.S.C. §1983, Dismissal Under Fed. R. Civ. P. 12(b)(6) is Improper.**

As Defendant Atcheson acknowledges, to state a claim under section 1983 Plaintiffs must simply allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Maniaci v. Georgetown Univ.*, 2007 U.S. Dist. LEXIS 66236 (D.D.C. 2007). Certainly, even Defendants will agree that Plaintiffs have *alleged* deprivation of a right secured by the Constitution. Namely, Plaintiffs' complaint alleges that Defendant Atcheson violated Plaintiffs' constitutional rights pursuant to 42 U.S.C. §1981 (Amended Complaint at ¶¶

6

74-76) and the Fifth Amendment (Second Amended Complaint at ¶¶87-90)[1]. Furthermore, it is of no dispute that the alleged deprivation was committed by Defendant Atcheson, while acting under the color of law as a lieutenant for the Metropolitan Police Department. Accordingly, Plaintiffs have satisfied the pleading requirements and dismissal under Rule 12(b)(6) is improper.

Nonetheless, Defendant Atcheson would like this court to believe that Plaintiffs' discrimination claim should fail because Plaintiffs have not "provid[ed] this court with *actual* evidence of discrimination"...which Atcheson argues is "the type of evidentiary showing required to survive a summary judgment challenge to their Fifth Amendment claim." (Emphasis added.) Atcheson's Motion at p. 10. In a desperate attempt to undermine and redefine racial discrimination standards, Defendant Atcheson tries to persuade this honorable court to believe that no discrimination claim can survive unless the plaintiffs can somehow provide the court with "*direct* evidence" of the defendant's "motive" for mistreating and treating Plaintiffs differently from their Caucasian counterparts. Such a radical redefining of racial discrimination standards of proof is simply unjustifiable and absolutely misplaced.

In *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003), the main case Defendant Atcheson uses to support his misplaced analysis, the City, in submitting the subject referendum petition, acted pursuant to the requirement of its charter, which sets out a facially neutral petitioning procedure, and the city engineer, in refusing to issue the subject permits, performed a nondiscretionary, ministerial act consistent with the City Charter. Unlike Defendant Atcheson who assaulted Plaintiffs

---

[1] Paragraphs 1- 80 of Plaintiffs' Amended Complaint are incorporated by reference into Plaintiffs' Second Amended Complaint.

7

with racial epithets, calling them "dumb, lazy, mope, criminal motherf**ker, scum bag," and otherwise discriminated against them by treating them less favorably than their Caucasian counterparts, was not performing some "nondiscretionary, ministerial act consistent" with any MPD or District policy or procedure. The Supreme Court has noted that cases like *City of Cuyahoga Falls* and its progeny apply to situations where the action by a State is racially neutral on its face. *See, e.g.*, *Reno v. Bossier Parish School Bd.*, 520 U.S. 471 (1997), 481; *City of Mobile v. Bolden*, 446 U.S. 55, 62 (1980). Considering such, this court would be hard-pressed to analogize Defendant Atcheson's conduct to that of the defendant in *City of Cuyahoga Falls* and State actors in other similar matters who set out a facially neutral petition, especially considering Atcheson's conduct was directed only to minority employees and not to similarly situated Caucasians. It then follows that dismissal in this matter would be unwarranted and unjustified.

      **B.**    **Plaintiffs' Section 1983 Claims Satisfy the McDonnell Douglass Analysis And Are Therefore Sufficient to Survive Summary Judgment.**

While sections 1981 and 1983 differ in the types of discrimination they proscribe, courts have held that when employment discrimination is at issue in such cases Title VII standards apply even when, as in the instant matter, the claims were made under sections 1981 and 1983. *Powell v. City of Pittsfield*, 143 F.Supp. 2d 94, 114-115 (D.Mass. 2001) (citing *T & S Service Associates, Inc. v. Crenson*, 666 F.2d 722, 724 n. 2 (1st Cir. 1981); *Stubblefield v. City of Jackson*, 871 F.Supp. 903, 908 n. 7 (S.D.Miss. 1994)). Accordingly and despite Defendant Atcheson's failure to acknowledge the same, this court should apply to the matter at hand the three stage, burden-shifting framework first

outlined in the Title VII employment discrimination case of *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973). *Id*. In so doing, this court should look to *Powell v. City of Pittsfield, supra*, for guidance because in *Powell*, as in the instant matter, the defendants sought summary judgment as to the plaintiffs' section 1981 and section 1983 employment discrimination claims. Significantly, the *Powell* Court used the *McDonnell Douglass* paradigm to consider the defendants' summary judgment motion and to support the court's conclusion.

      i.    **Plaintiffs have established a prima face case of unlawful discrimination**.

Under the *McDonnell Douglass* framework, Plaintiffs must show a prima facie case of unlawful discrimination, including a demonstration that (1) they are members of a protected class; (2) an adverse employment action was taken against them; (3) they were qualified for the employment they held; and (4) the position remained open or was filled by persons with similar qualifications to those held by Plaintiffs. *McDonnell Douglass, supra,* at 802. Like the plaintiff in *Powell v. City of Pittsfield*, Plaintiffs in this case have overcome the "modest" prima facie hurdle. *Powell, supra*, at 116 (citing *Fernandez v. Costa Bros. Masonry, Inc*., 199 F.3d 572, 580-81 (1st Cir. 1999).

Specifically, Plaintiffs are African American and/or Asian American and therefore members of a protected class. Amended Complaint at ¶¶ 3 – 8. Defendant Atcheson took adverse employment actions against Plaintiffs and otherwise continually discriminated against Plaintiffs, including, but not limited to, lowering their performance evaluations, impeding their promotions, and treating them in a harsh and unfavorable manner. *Id*. at ¶ 12. The following include specific, supported instances of Atcheson's adverse employment actions against Plaintiffs.

**Denial of Overtime and Take-Home Vehicles**

Once Defendant Atcheson took command of the Environmental Crimes Unit ("ECU"), he informed ECU members that overtime would not be allowed, but he made an exception for Caucasian Investigator Paul Kurgan ("Kurgan"), who was allowed to work unlimited overtime with the Warrant Squad. Exhibit 4, Report of EEO Investigation ("EEO Report"), dated September 13, 2004. Plaintiff Johnson "occasionally worked overtime, however, he did not have easy access to overtime like Investigator Kurgan, who seemed to work unlimited Warrant Squad overtime and received a take home vehicle." *Id*. at p. 6. Plaintiff Johnson never had the occasion to work unlimited overtime like Kurgan. Exhibit 5, In the Matter of Lieutenant Robert Atcheson, 3rd District, Case No. CS-03-1566, Statement of Inspector Gregory Johnson, August 5, 2005 at p. 675.

Further, Plaintiff Johnson was required to provide Defendant Atcheson with "a plan of action to justify the overtime." Exhibit 4, EEO Report at p. 8. Likewise, when Plaintiff Squires attempted to work overtime, he was required to put a request in writing and receive pre-approval by Defendant Atcheson. *Id*. As a result, Plaintiff Squires worked overtime only about six times per year once Defendant Atcheson took command of ECU. Exhibit 4, EEO Report at p. 8. While Atcheson was in charge, Plaintiff Chung "received compensatory time only." Id. at p. 8. Defendant Atcheson basically made his decision to award overtime and take-home vehicles on his personal likes and dislikes. Id. at pp. 6-7. Consequently, unlike Kurgan and Dorian DeSantis, Plaintiffs White, Bush and Chung did not receive overtime and take-home vehicles. *Id*. at pp. 7, 9.

When Defendant Atcheson was in charge of assigning members to an FBI Task Force, he informed Warrant Squad members, including Plaintiffs that the FBI Task Force would receive overtime and a take-home vehicle and that membership would be based on seniority. *Id.* at p. 3. Plaintiff Bush had more seniority than member(s) Atcheson assigned to the FBI Task Force; however, Atcheson did not and further refused to assign Bush to the Task Force. *Id.* Additionally, Atcheson permitted Investigators Kurgan and DeSantis to receive overtime and take-home vehicles funded by the Task Force; however, Atcheson did not and further refused to allow Plaintiff Bush to receive overtime and a take-home vehicle funded by the Task Force. *Id.*

**Lowering Performance Ratings**

Plaintiff Bush not only had significant seniority, he also led the Warrant Squad in number of arrests and he had received a P.D. 751 for his performance in a high-profile homicide case; nonetheless, two days after Bush was not selected for the FBI Task Force, Atcheson informed him that "if he had to rate him on job performance, he would rate him as a 'disappointment' and that 'numbers mean absolutely nothing to him.'" Exhibit 4, EEO Report at pp. 3-4. When Plaintiff White first arrived at ECU, he rated Plaintiffs Squires and Johnson as "Above Average." *Id.* at p. 7. Defendant Atcheson threatened to give Plaintiff White a poor evaluation if White did not lower their ratings to "Below Average" because, as Atcheson said, "they are worthless." *Id.* Plaintiff White refused to acquiesce to Atcheson's unjustifiable and illegitimate demands and consequently Atcheson rated Plaintiff White only one point above "Average." *Id.* Similarly, Atcheson threatened Plaintiff Muslim when Muslim he refused to revise unit members' ratings

11

from "Above Average" to "Average." *Id*. at p. 12.  Plaintiff Muslim refused to acquiesce to Atcheson's demands and in turn received an evaluation of "Below Average."[2]

Defendant Atcheson rated Plaintiff Squires performance "Average, but it was on the borderline of 'Below Average.'" *Id*. at p. 9.  Plaintiff Squires was also reassigned from the Environmental Crime Unit and demoted from Investigator to the position of Officer, reassigned to the Fourth District on or about June 2007.  Deposition of Randy Squires, dated July 10, 2007, at pp. 25, 33.  Defendant Atcheson routinely order Plaintiff Muslim to write up Plaintiff Squires whenever Plaintiff Squires arrived for duty five minutes late, notwithstanding that other members had a fifteen-minute grace period for late arrival.  Exhibit 4, EEO Report at p. 11.

**Denial of Training Requests**

During 2002, Defendant Atcheson denied Plaintiff Squires' requests to attend training courses, specifically for Emergency Medical Technician recertification consisting of a one-week course.  Exhibit 6, Deposition of Randy Squires at pp. 73-75.  As a consequence, Plaintiff Squires lost his EMT recertification.  *Id*.  In order to become recertified at this point, Plaintiff Squires would be required to take a six-week program. *Id*. at p. 77.  Additionally, in 2003 or 2004, Defendant Atcheson denied Plaintiff Squires' request to attend forty hours of training pertaining to environmental crimes.  *Id*. at pp. 78-79.

Defendants took such actions despite Plaintiffs' qualifications as long-term members of the police force with significant seniority.  *Id.*  at ¶¶ 14, 29, 36, 44, 50, 56 and 59.  At the time of the EEO investigation of the matters complained of herein, none

---

[2] Plaintiff Muslim subsequently appealed his evaluation and received an "Average" rating. EEO Report at p. 12.

12

of the plaintiffs had less than fourteen years of experience. *Id.* Other similarly situated white police officers and even white police officers with less seniority were treated differently in that they were treated more favorably with regard to performance evaluations, promotions, training and overtime opportunities. Amended Complaint at ¶¶ 16, 18, 20, 21, 32, 34, 39, 40, 42, 46-49, 52-54, 58 and 62.

      ii.    **Defendant Atcheson failed to proffer a valid nondiscriminatory reason for the adverse employment action**.

At the second stage of *McDonnell Douglass*, the burden shifts to the District to produce a valid, nondiscriminatory reason for the adverse employment action. *Powell, supra* at 116 (citing *Thomas v. Eastman Kodak Co*., 183 F.3d 38, 56 (1st Cir. 1999)). Unlike the defendants in *Powell*, Defendant Atcheson has failed to submit any such reasons for the adverse action, thereby failing to satisfy his burden.

      iii.    **Any nondiscriminatory reason suggested by the District is pretextual**.

At the third stage of the *McDonnell Douglass* paradigm, the burden shifts back to Plaintiffs to demonstrate that Defendant Atcheson's reasons were not legitimate, but instead, "were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000). At this point, the *Powell* court found it necessary to analyze specific evidence, while being "mindful that at summary judgment the pertinent issue is whether Plaintiff has provided evidence sufficient to 'enable [ ] a factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'" *Powell, supra*, at 116 (citing *Feliciano De La Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 6 (1st Cir. 2000). However, and because Defendants failed to proffer any nondiscriminatory reasons for their actions, Plaintiffs need not and

indeed cannot mount a challenge of pretext. Considering the foregoing, Plaintiffs' claims satisfy the *McDonnell Douglass* framework and are therefore sufficient to survive summary judgment.

### C. Genuine Issues of Material Fact as to Whether Defendant Atcheson is Entitled to Qualified Immunity Preclude Summary Judgment.

Of peculiar note is Defendant Atcheson's ill-supported contention that "in the absence of any facts establishing a discriminatory animus on the part of defendant Atcheson" he is entitled to qualified immunity. Atcheson's Motion at p. 16. Notwithstanding Defendant Atcheson's contentions otherwise and while he may not define the proof in this matter as "direct evidence," the attached exhibits clearly demonstrate that Atcheson discriminated against Plaintiffs, including, but not limited to, assaulting them with racial epithets, lowering their performance evaluations, impeding their promotions, and treating them in a harsh and unfavorable manner, inconsistent with how he treated similarly situated Caucasian officers. *See, generally*, Exhibits 1-6.

"Although the qualified immunity determination is a legal question, it is not answered in the abstract but in reference to the particular facts of the case." *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988); *see also Green v. Carlson*, 826 F.2d 647, 649 (7th Cir. 1987). In some cases, as in the instant matter, the factual issues, if disputed, need to be resolved by the trier of fact prior to the court determining whether qualified immunity will serve as a defense. *Sabir v. District of Columbia*, 755 A.2d 449, 455 (D.C. 2000). Pointedly, Defendant Atcheson seems to ignore and absolutely wants to disregard the racially defined nature of his behavior and the fact that the record reveals factual findings by MPD that he unlawfully discriminated against Plaintiffs based upon their

14

race. *See* Exhibits 3 and 4. With such issues in dispute as to their veracity and relevancy, the issue of qualified immunity is not ripe for this court's determination, but its factual underpinnings must be submitted to the consideration of a jury. Therefore, summary judgment is not proper.

        **D.**    **Defendant Atcheson's Motion for Summary Judgment Should Fail on Procedural Grounds.**

Defendant Atcheson filed his subject Motion, in part, pursuant to Fed. R. Civ. P. 56(c), which in this jurisdiction is further defined by LCvR 7(h). Rule 7(h) requires that:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement.

In his Motion, Atcheson asserts that he attached thereto a "Statement of Material Facts as to which There is No Genuine Issue" and "Exhibits." Atcheson's Motion at p. 1. Notwithstanding Atcheson's assertion, conspicuously and fatally absent from Atcheson's submission in support of his Motion is any such Statement of Material Facts and/or exhibits. Whether by oversight or carelessness, without a statement of facts in dispute, Defendant Atcheson's Motion fails to meet the requirements of a summary judgment request. More importantly, this fatal flaw prevents the court from assessing Atcheson's Motion under a summary judgment standard, which burdens the moving party with demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, at 324. Accordingly, Defendant Atcheson's Motion is deficient and should fail on procedural grounds

## V.  CONCLUSION

Based upon the foregoing and for any other reasons that may appear to this Honorable Court, Plaintiffs respectfully request that Defendant Robert Atcheson's Motion for Partial Summary Judgment be DENIED.

                                                          Respectfully submitted,

                                                        <u>/s/ Donald M. Temple /s/</u>
                                                        Donald M. Temple #408749
                                                        1229 15th Street, NW
                                                        Washington, DC 20005