## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| Randy Squires, et al. | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| Robert Atcheson, et al. | ) Civil Action No.: 1:05-cv-01120 (JR) |
| | ) Judge James Robertson |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## JOINT PRE-TRIAL STATEMENT

COME NOW Plaintiffs and Defendant, by and through the undersigned counsel, and files this Joint Pre-Trial Statement pursuant to United States District Court Local Rule 16.  After unsuccessful efforts to settle the dispute at issue, Plaintiff is prepared to proceed with trial.  Accordingly, the Parties hereby advise the Court of the following:

  **(A)  Nature of the case.**  Plaintiffs are minority police officers employed by the District of Columbia Metropolitan Police Department ("MPD").  They worked in either the Environmental Crimes Unit ("ECU") or Warrant Squad Unit ("WSU") under Lieutenant Robert Atcheson ("Atcheson"), a Caucasian male charged with the responsibility of supervising Plaintiffs.

Throughout his supervision of Plaintiffs, Defendant Atcheson continually discriminated against Plaintiffs, the minority officers on his squad, by taking numerous adverse actions against them designed to cause their removal, voluntarily or involuntarily, from the ECU or WSU.  The actions Plaintiffs complain of went above and beyond the scope of ordinary tribulations of the workplace, and negatively affected the

terms and conditions of their employment with the MPD.  This case involves seven minority police officers who, for years, were mentally and emotionally tormented by their lieutenant, simply because of the color of their skin.  Lieutenant Atcheson created a pervasive and harsh, racially hostile working environment for the Plaintiffs, treating them with disproportionate abusiveness and callousness that he did not inflict upon the Caucasian officers in his squad.  More specifically, Defendant Atcheson has subjected each of the Plaintiffs to the following illegal discrimination:

The District denies all allegations and further asserts that although Lieutenant Atcheson's action did not rise to the level of a violation of Title VII, the District took the appropriate action to discipline Lieutenant Atcheson for his conduct.

## RANDY SQUIRES

Plaintiff Squires began his employment with MPD in October 1998.  After being transferred to the ECU under Lieutenant Atcheson, Squires was forced to endure a variety of adverse actions taken against him as a result of Atcheson's racially motivated and, ultimately, retaliatory campaign of hatred against him.

Squires were subjected to racially disparate treatment, which intensified after he complained to the EEOC.  He was subjected to continuous discriminatory and hostile treatment and retaliatory conduct in several respects including but not limited to assignments, evaluation, overtime, disciplinary action, aggressive interrogation sessions, excessive use of abusive and demeaning language, disparate access to and use of police cars and emergency breathing equipment.  Atcheson inflicted continuous, demeaning verbal abuse on Squires and other non-white officers, calling Plaintiffs "worthless" and "useless pieces of shit."  Squires was denied training opportunities offered to similarly

situated white police officers. His gun and badge were seized without any legitimate reason. Atcheson forbade Squires from taking his police car home while allowing a white officer to do the same; refused to grant him access to emergency breathing equipment while granting such access to white officers; denied him overtime opportunities while affording such opportunities to white officers; lowered his performance evaluation; subjected him to frequent excessive and disproportionate discipline; and deliberately gave false information to another law enforcement official as a pretext for firing.

## LOUIE WHITE

Plaintiff White alleges that Defendant Atcheson: deliberately and willfully gave him a poor annual performance evaluation; subjected him to a higher performance criteria than that to which white officers were subjected; and repeatedly subjected him to intense interrogation sessions, another form of treatment not visited upon white officers. Atcheson targeted Plaintiff White for disparate treatment on the basis of his race, including but not limited to intimidation, threats, and efforts to impede Plaintiff White's career advancement and force him out of his job. Before 2001, Plaintiff White's evaluations ranged between above average to outstanding. In instances where a Plaintiff attempted to question the validity of Atcheson's orders, he would humiliate, denigrate and demoralize that person by forcing him, just before the end of the work day, to write and re-write the circumstances of the events (PD-119's).

Atcheson's conduct revealed a plan that was designed to impede, demote or fire non-white officers. During evaluation periods it was common for Atcheson to manipulate the assessment by stating that Paul Kurgan, a Caucasian officer, was

"outstanding" while Plaintiffs Johnson and Squires were classified as lazy and worthless. In September 2003, Atcheson unreasonably demanded the unit produce more arrests. In October 2003, Atcheson deliberately and willfully gave Plaintiff a poor annual performance evaluation. The previous year Plaintiff White received an overall above average performance rating. Despite knowledge of Atcheson's unlawful conduct, none of his supervisors took any measure to prevent his unlawful behavior. In October 2003, Atcheson ordered Plaintiff White to meet with Captain Brito to discuss Plaintiff White's alleged poor performance. This meeting was a pretext for Atcheson's racially motivated plan to force Plaintiff White out of the ECU. At that meeting, ratified by his supervisors, Atcheson gave Plaintiff White two stark options: 1) to voluntarily leave the ECU or 2) participate in a Performance Rating Improvement Plan (PRIP). However, if Plaintiff White failed to improve under PRIP, the first option would not be available to him. Atcheson drafted a racially based PRIP for Plaintiff White to allegedly "get your average members back on track." The plan was deliberately overbroad, vague and burdensome so as to ensure White's failure. Atcheson denied training and overtime for Plaintiff White without justification. Atcheson repeatedly and continuously demanded that Plaintiff White apply different treatment, based on race, to the officers under Plaintiff White's direct supervision. Atcheson routinely undermined Plaintiff White's authority. Plaintiff was subjected to continuous discriminatory and hostile treatment and retaliatory conduct in several respects including but not limited to lowered evaluation, denial of overtime requests, denial of training, unjustified discipline, aggressive interrogation sessions and excessive use of racially abusive language. Plaintiff was deliberately and continuously

intimidated, frustrated, patronized and offended in a racially hostile environment and workplace climate that impeded his ability to be productive.

## WAI TAT CHUNG

Plaintiff Chung alleges that Defendant Atcheson: refused to allow him to return to the WSU after he completed a ninety-day assignment with the Narcotics Strike Force, and then retaliated against him upon learning that he had complained to his union representative; refused to sign Chung's compensation form without Chung reducing his reported time, a form of treatment to which white officers were not subjected; berated him verbally through the use of profanity, without doing the same to white officers; required him to complete meaningless tasks under the constant threat of firing; denied him overtime while not subjecting white officers to the same treatment; and gave him an unjustifiably low performance evaluation.

## ROBERT BUSH

Defendant Atcheson caused Bush to be removed from the unit and replaced him with white officers who were given favorable treatment; lowered his performance evaluations while not subjecting white officers to the same treatment; and routinely subjected him to verbal abuse. Atcheson subjected Bush to a hostile environment by continuously demeaning non-white officers in his presence, using profanity and insulting language in stark contrast to Atcheson's treatment of white officers. Atcheson continuously and openly referred to minority police officers as "all pieces of shit;" "a bomb needs to be deployed over there [the ECU]." Defendant Atcheson's loathing was directed continuously and exclusively toward the non-white officers under his supervision. He openly expressed his intention to "get rid of" non-white officers. On

September 28, 2003, when Plaintiff Bush was off-duty but on "limited duty," and the WSU was undermanned, Defendant Atcheson deployed Bush to another unit. After Plaintiff Bush's departure, Atcheson openly gloated about "getting rid" of him. Atcheson subsequently recruited two white officers from another unit and gave them overtime work and a departmental vehicle. In contrast, Plaintiff Bush's request for overtime and the use of a take-home cruiser had been denied by Atcheson. He also caused Bush's performance evaluation to be lowered in 2002 and 2003, while causing similarly-situated Caucasian police officers to receive above-ratings. Atcheson mentally tormented the Plaintiffs and caused a racially charged atmosphere. Atcheson threatened and retaliated against those who reported his unlawful conduct.

## GREGORY JOHNSON

Plaintiff Johnson alleges that Defendant Atcheson: deprived him access to and use of certain emergency breathing equipment; caused his performance evaluations to be lowered, again, while white officers were not subjected to the same treatment; refused consistently Johnson's request for overtime while giving white officers overtime opportunities; and subjected him to numerous frivolous investigations that were designed to result in his termination. Atcheson subjected Plaintiff Johnson to a hostile environment by continuously demeaning non-white officers in his presence, using profanity and insulting language in stark contrast to Atcheson's treatment of white officers. Atcheson reviled Plaintiffs, saying he was "going to get those motherf…kers." Atcheson stated that Plaintiffs Johnson and Squires should never be granted Acting Sergeant status. Atcheson also caused Plaintiff Johnson's performance evaluations to be lowered in 2002 and 2003, while causing similarly situated Caucasian police officers to

receive above average ratings.  Atcheson mentally tormented the Plaintiffs and caused a racially charged atmosphere.  For example, after Plaintiff requested emergency leave to attend to his ailing father, Atcheson became hostile and demanded to know the nature of Johnson's father's ailment.  Similarly situated Caucasian police offices were not treated in this manner.  Atcheson swamped Sgt. Louie White and Sgt. Muslim with work, while calling repeatedly throughout the day to complain about Plaintiffs Johnson and Squires.

## JOSEPH GATLING

Plaintiff Gatling alleges that Defendant Atcheson subjected him to a hostile work environment, without doing the same to white police officers.  Atcheson subjected Plaintiff Gatling to a hostile work environment by continuously demeaning non-white officers in his presence, using profanity and insulting language in stark contrast to Atcheson's treatment of white officers.  Atcheson stated that he "does not treat all people equal, because all people are not equal."  Atcheson constantly demeaned Plaintiffs as "worthless" and "useless pieces of shit."  He mentally tormented the Plaintiffs and caused a racially charged atmosphere.  Atcheson stated that he did not like Bush, Chung, Greg Johnson and Sgt. Muslim, and that he was going to "get rid of" them.  In an underhanded manner, Atcheson tried to drive Plaintiff Gatling out of the unit.

## SHAKIR MUSLIM

Finally, Plaintiff Muslim alleges that Defendant Atcheson subjected him to unjustified discipline, intimidation, threats, and negative evaluations.  Moreover, Atcheson retaliated against Plaintiff Muslim when he refused to leave the unit by subjecting him to a more strenuous review than that to which white officers were subjected.  Plaintiff suffered disparate treatment on the basis of his race, including but not

limited to intimidation, threats, and efforts to impede Plaintiff Muslim's career advancement. Atcheson repeatedly and continuously demanded that Plaintiff Muslim mete out disparate treatment to non-white officers. Atcheson repeatedly and continuously inflicted retribution, and punished and retaliated against Plaintiff Muslim whenever he objected or refused to execute Atcheson's directives to apply different treatment, based on race, to the officers under Plaintiff Muslim's direct supervision. Atcheson routinely undermined Plaintiff Muslim's authority and overrode his efforts to ensure the white officers' compliance with official procedures. Plaintiff was subjected to continuous discriminatory and hostile treatment and retaliatory conduct in several respects including but not limited to evaluation, unjustified discipline, aggressive interrogation sessions and excessive use of racially abusive language. Atcheson falsely asserted that Plaintiff Muslim "was incapable of running the unit." Plaintiff was deliberately and continuously intimidated, frustrated, patronized and offended in a racially hostile environment and workplace climate that impeded his ability to be productive.

(B) **Plaintiffs' claims.** Plaintiffs allege the following counts against all Defendants: racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, et. seq. (Title VII") and 42 U.S.C. § 1981 ("§ 1981").

**Defendant's Defenses**:

1.    Plaintiffs have failed to state a claim upon which relief may be granted.

2.    The District is not liable to plaintiff under Title VII.

3.    Plaintiff may have failed to exhaust his administrative remedies under Title VII.

4.      All actions taken by District relating to plaintiffs were necessary, reasonable, pursuant to lawful authority, and based on legitimate, non-discriminatory reasons.

5.      Plaintiff was not subjected to an adverse employment action.

6.      The District has a bona fide EEO policy and procedures and, therefore, the District cannot be held liable to plaintiff.

7.      Plaintiff's claims are barred by the applicable statute of limitations.

**C.      UNDISPUTED ISSUES:**

1.      All issues are in dispute.

**D.      REQUESTED STIPULATIONS:**

Plaintiffs:  **None**

**Defendant's Requested Stipulations:**

1.      The MPD has a bona fide EEO policy, which was available to plaintiff.

2.      All exhibits are authentic.

**Plaintiffs' Objections:**

1,      Object to Requested Stipulation.

**E.      DISPUTED ISSUES:**

By parties:

1.      All issues of liability and damages.

**F.      RELIEF SOUGHT:**

Plaintiff:  Compensatory Damages

Defendant:  Dismissal of plaintiff's suit against the District, with prejudice.

**G.      CITATIONS:**

None at this time.

The District will supplement this section.

**H.    PENDING MOTIONS:**

**Defendant:**

The parties requests that it be given additional time to file motion(s) *in limine*.

**I.    WITNESSES:**

**Plaintiffs' Witnesses:**  Plaintiffs reserve the right to examine any witnesses that the Defense calls at trial; in addition thereto, Plaintiff plans to call the following witnesses:

1.  Paul Kurgan

2.  Carl  Ruleman

3.  Mary Bonacorsey

4.  Captain Victor Brito

5.  Commander John Barrett, Jr.

6.  Investigator Cassandra Watts
    Investigator James Collins

7.  Officer Brenda Williams
    Officer Lawrence Dance

8.  Sergeant George H. Daley

9.  Joyce McFadden

10. Sergeant Gregory H. Darley
    FOP Labor Committee

11. Sergeant Hammond

12. Yvette Bryant
    Civilian Employee MPD

13.  Sergeant Charles Baugard
     Civilian Employee MPD

14.  Shakir Muslim

15.  Louis White

16.  Gregory J. Johnson

17.  Wai Tat Chung

Plaintiffs reserve the right to call any witness listed by Defendant.

**Defendants Witnesses:**

1.      Debbie-Anne Burt
        MPD EEO Investigator
        Ms. Burt will testify as to her EEO investigation.

2.      Commander Evelyn L. Primas
        Commander Primas will testify about the trial board hearing.

3.      Commander Diane C. Groomes
        Commander Groomes will testify about the trial board hearing.

4.      Captain Melvin L. Scott
        Captain Scott will testify about the trial board hearing.

5.      Captain Brito
        Captain Brito will testify as to all facts relevant to this matter.

6.      Commander Barrett
        Captain Barrett will testify as to all facts relevant to this matter.

7.      Chief Broadbent
        Chief Broadbent will testify as to all facts relevant to this matter.

8.      Lieutenant Atcheson.
        Lieutenant Atcheson will testify as to all facts relevant to this
        matter.

**J.      EXHIBITS**

**PLAINTIFFS' EXHIBITS**

1.  EEO Statements of Complainants

2.  Letter of Direction from then Assistant Chief for the Office of Professional
    Responsibility, Peter Newsham, to Lieutenant Robert Atcheson, dated April 14,
    2004

3.  P.D. 62-E (Documentation Form) from Lieutenant Robert Atcheson to Sergeant
    Kathryn Hammond, dated May 20, 2004.

4.  Adverse Action Investigative Reports with Recommendations involving
    Investigator Randy Squires of the Environmental Crimes Unit, dated April 4,
    2003 and June 9, 2003.

5.  Vehicle Return Receipt and Vehicle Delivery Receipt from Acme  Auto Leasing,
    LLC, dated July 21, 2003

6.  Memorandum from Lieutenant Robert Atcheson to Ms. Warren, Fleet
    Management, dated September 9 2003.

7.  Reports of Warrant Investigations Section Vehicles, dated  November 7, 14, 25
    and December 2, 2003

8.  Dereliction Report – P.D. 750 for ECU Investigator Paul Kurgan, dated
    September 4, 2003

9.  Sergeant and Officer Performance Rating Forms for Warrant  Squad and ECU
    members for rating period 2002-2003

10.  Report of Investigation – P.D. 854 for Conversations with FBI Supervisory
     Special Agent Ronald Chavarro, dated September10, 2004

11.  Letter from Atcheson to Johnson, dated December 5, 2003

12.  Discrimination Complaint Against Atcheson

13.  Plaintiffs' Performance Evaluations

14.  Police Department Organizational Char

15.  Collective Bargaining Agreement between DCMPD and Police Union

16.  TACIS Report for Warrant Squad Investigator Robert Bush

17.  TACIS Report for Warrant Squad Investigator Wai Tat Chung

18.  TACIS Report for Warrant Squad Investigator John Reese

19.  TACIS Report for Warrant Squad Investigator Joycelyn McFadden

20.  TACIS Report for Warrant Squad Investigator Corpus Garcia

21.  TACIS Report for Warrant Squad Investigator Joseph Gatling

22.  TACIS Report for Warrant Squad Investigator Paul Kurgan

23. TACIS Report for IPS Range Instructor Officer Dorian DeSantis

24. TACIS Report for ECU Investigator Gregory Johnson

25. TACIS Report for ECU Investigator Randy Squires

.     **Defendant**:   See Defendant's exhibit list attached hereto.
Any and all exhibits relied upon by plaintiff.

**K.     DEPOSITION TESTIMONY**:

   Plaintiffs: At this time, Plaintiffs are not aware of the unavailability of
any witness.   Therefore, at this time Plaintiffs do not intend to introduce into
evidence any deposition testimony, except for purposes of impeachment.

Defendant:  Defendant will use plaintiff's depositions for impeachment or
cross-examination purposes.

**L        PLEADINGS AND DISCOVERY RESPONSES**:

Plaintiffs:

Defendant:      Defendant reserves the right to use plaintiffs' responses to interrogatory requests and production of documents for impeachment or cross-examination purposes.

**M.        DEMONSTRATIVE OR PHYSICAL EVIDENCE**:

Plaintiffs:   None

Defendant:      None

**N.        VIDEOTAPE**:

Plaintiffs:  None

Defendant:  None.

**O        VOIR DIRE**

The Parties request that they be allowed to submit proposed *voir dire* within a week following the final pretrial conference.

**P.        JURY INSTRUCTIONS**:

Standard jury instructions to be submitted and the parties. will submit non-standard jury instruction in accordance with the evidence at trial.

**(Q)  Itemization of damages.**  For the injuries sustained as a direct result of the event described above, Plaintiffs request that the Court grant (i) compensatory damages in excess of $300,000; punitive damages and attorney fees.

**(R) Additional relief request.** Plaintiffs request no further relief.


Respectfully submitted,

TEMPLE LAW OFFICES


By:   _____
Donald M. Temple, Esq. (#408749)
1229 15th Street, NW
Washington, DC 20005
(202) 628-1101 Phone
(202) 628-1149 Fax

***Attorney for Plaintiffs***